**In re ETABLISSEMENTS DARTY ET FILS.**
**Appeal No. 85–524.**

United States Court of Appeals,
Federal Circuit.

Decided April 11, 1985.

Harold D. Steinberg, of New York City, for appellant.

Joseph F. Nakamura, Solicitor, Fred E. McKelvey, Acting Deputy Solicitor, and Michael L. Gellner, Asst. Solicitor, for U.S. Patent and Trademark Office.

Before DAVIS, BALDWIN and NIES, Circuit Judges.

1. Application Serial No. 319,502, filed July 17, 1981 (claiming priority under Section 44(d) of the Trademark Act based on an application for registration filed in France on March 12, 1981), by Etablissements Darty et Fils, a French corporation, to register the mark DARTY for:

 repair and maintenance of audio visual equipment, radios, televisions, photographic and movie cameras, high fi systems, tape recorders, household electrical appliances, furniture, bathroom equipment and domestic equipment in Class 37, distributorship services in the fields of audio visual equipment, radios, television, photographic and movie cameras, high fi systems, tape recorders, household electrical appliances, furniture, bathroom equipment, domestic equipment, sporting equipment and clothing in Class 42.

2. Sections 2(e)(3) and 2(f) provide:

 No trademark by which the goods of the applicant may be distinguished from the

NIES, Circuit Judge.

This appeal from the decision of the U.S. Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB or board), reported at 220 USPQ 260 (1984), affirming the examiner's refusal to register DARTY[1] as a service mark on the Principal Register. Refusal is based on the ground that DARTY is "primarily merely a surname" within the meaning of Section 2(e)(3) of the Lanham Act (15 U.S.C. § 1051 *et seq.*), and, thus, is not registrable on the Principal Register in the absence of evidence that the name has become distinctive of the applicants' goods in commerce, as specified in Section 2(f).[2]

The board correctly recognized that the PTO had the burden of establishing a *prima facie* case that DARTY is "primarily merely a surname." *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 832, 184 USPQ 421, 422 (CCPA 1975); *In re Harris-Intertype Corp.*, 518 F.2d 629, 630, 186 USPQ 238, 239 (CCPA 1975). This burden was found to have been met by evidence that: (i) DARTY is the surname of the president of appellant; (ii) DARTY appears as a surname in a number of telephone directories across the nation; and (iii) DARTY does not appear in dictionaries as a French or English word.

Appellant submitted no evidence that the expression DARTY has any non-surname significance, but rather, attacks the suffi-

goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

(e) Consists of a mark which ... (3) is primarily merely a surname.

(f) Except as expressly excluded in paragraphs (a)-(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration.

ciency of the PTO's *prima facie* case. Principally, appellant maintains that DARTY is so unusual a surname that the public would be likely to perceive it as a coined term, the word "dart" with an added "y", rather than as a surname.

■ The statute in Section 2(e)(3) (15 U.S.C. § 1052(e)(3)) reflects the common law that exclusive rights in a surname *per se* can not be established without evidence of long and exclusive use which changes its significance to the public from a surname of an individual to a mark for particular goods or services. The common law also recognizes that surnames are shared by more than one individual, each of whom may have an interest in using his surname in business, and by the requirement for evidence of distinctiveness, in effect, delays appropriation of exclusive rights in the name. *See* 1 J. Gilson, *Trademark Protection and Practice* § 2.08 (1982). The statute, thus, provides a period of time, as under the common law, to accommodate the competing interests of others. An analysis of similar considerations in connection with geographic terms can be found in *In re Nantucket, Inc.*, 677 F.2d 95, 102–04, 213 USPQ 889, 895–96 (CCPA 1982) (Nies, J., concurring).

■ The question of whether a word sought to be registered is primarily merely a surname within the meaning of the statute can be resolved only on a case by case basis. Even though a mark may have been adopted because it is the surname of one connected with the business, it may not be primarily merely a surname under the statute because it is also a word having ordinary language meaning. The language meaning is likely to be the primary meaning to the public. *See Fisher Radio Corp. v. Bird Electronic Corp.*, 162 USPQ 265, 266–67 (TTAB 1969) (BIRD not primarily merely a surname). On the other hand, where no common word meaning can be shown, a more difficult question must be answered concerning whether the mark presented for registration would be perceived as a surname or as an arbitrary term.

■ In this case, the subject mark is not only the surname of a principal of the business, but also is used in the company name in a manner which reveals its surname significance, at least to those with a modicum of familiarity with the French language. (Darty et Fils translates as Darty and Son). This, in itself, is highly persuasive that the public would perceive DARTY as a surname. In addition, the examiner made of record evidence that others in a number of cities in this country bear the surname DARTY. Thus, as a surname, DARTY is not so unusual that such significance would not be recognized by a substantial number of persons. Nor can the interests of those having the surname DARTY be discounted as *de minimis*. Under these circumstances, the statutory policy against immediate registration on the Principal Register appropriately should be applied.

Appellant has attempted to convince us that this case is the same as *In re Kahan & Weisz*, 508 F.2d at 832–33, 184 USPQ at 421–22, in which DUCHARME for watches was held not to be primarily merely a surname. However, in that case it is apparent that the PTO initially refused registration without any evidence that DUCHARME was a surname. As indicated therein, the PTO sought to buttress its position by resort to the applicant's submissions. Not only was the refusal to register without the examiner having made a *prima facie* case improper, but also, as one might expect, the applicant's evidence was insufficient to establish a case for the PTO.

In any event, it must also be noted that, with respect to issues of fact, no precedential value can be given to the quantum of evidence apparently accepted in a prior case. The quantum of evidence which was persuasive against finding surname significance in one case may be insufficient in another because of differences in the names themselves. We do not know how DUCHARME was displayed, but we can see that it was likely to be taken as a fanciful mark for watches derived from the apt word "charm." Here there is no rela-

tionship between the word "dart" and repair, maintenance, and distributorship services, which would lead one to think of that word from the use of DARTY as the mark for such services.

We conclude that in view of the uncontrovertable evidence of surname usage of record, and the unpersuasiveness of appellant's argument that DARTY would be understood as a play on the word "dart," the board's finding that DARTY is primarily merely a surname is not clearly erroneous. *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1578–79, 222 USPQ 665, 666–67 (Fed.Cir.1984) (factual findings of TTAB reviewed under the "clearly erroneous" standard).

■ Nor can we accept appellant's further argument that, because the application is based on foreign priority, proof of distinctiveness cannot be required. Section 44(d)(2) merely excuses certain foreign ap-

plicants from alleging use in commerce to secure a registration under the statute.[3] The section does not require that registration be afforded on the Principal Register, as opposed to the Supplemental Register, in the absence of a showing of secondary meaning acquired by use in this country. Indeed, Section 44(e) specifically directs issuance of a registration on the Principal Register only "if eligible."[4]

Accordingly, we *affirm* the decision of the board upholding the rejection of the subject application under § 2(e)(3).

**AFFIRMED.**

\* \* \* \* \* \*

---

**3.** Section 44(d)(2) provides:

(d) An application for registration of a mark under sections 1051, 1052, 1053, 1054 or 1091 of this title, filed by a person described in subsection (b) of this section who has previously duly filed an application for registration of the same mark in one of the countries described in subsection (b) of this section shall be accorded the same force and effect as would be accorded to the same application if filed in the United States on the same date on which the application was first filed in such foreign country: *Provided, That—*

(2) the application conforms as nearly as practicable to the requirements of this chapter, *but use in commerce need not be alleged.* [Emphasis added.]

**4.** Section 44(e) provides, in pertinent part:

(e) A mark duly registered in the country of origin of the foreign applicant may be registered on the principal register *if eligible,* otherwise on the supplemental register in this chapter provided. [Emphasis added.]