Hearing:
May 14, 1987
Akelley
Paper No. 36

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

Societe Civile Des Domaines
Dourthe Freres and Philippe Dourthe
v.
S.A. Consortium Vinicole De
Bordeaux Et De La Gironde

———

Opposition No. 70,438 to application Serial No. 296,274 filed
February 9, 1981.

———

Fleit, Jacobson, Cohn & Price for Societe Civile Des Domaines
Dourthe Freres and Philippe Dourthe.

Robert A. Van Kirk and Chilton, Alix & Van Kirk for S.A.
Consortium Vinicole De Bordeaux Et De La Gironde.

———

Before Sams, Rooney and Simms, Members.

Opinion by Rooney, Member:

An opposition has been filed by Societe Civile Des
Domaines Dourthe Freres and Philippe Dourthe to registration of
the mark DOURTHE for wines. [1]

---

[1] Ser. No. 296,274 filed February 9, 1981 by Dourthe U.S.A., Inc.
and subsequently assigned to S.A. Consortium Vinicole de Bordeaux
et de la Gironde. First use as of June 1, 1980 was alleged.

The grounds for opposition are set forth below. Opposers are and have been engaged in the manufacture, sale, distribution, advertising and promotion of wine in commerce between France and the United States. Opposer, Dourthe Freres, uses and has used the mark DOURTHE PERE ET FILS in connection with wine in commerce with the United States. Opposers and applicant are engaged in the sale and promotion of their goods in the same trade channels and to the same purchasers. Opposers believe they will be damaged by the registration sought by applicant for the following reasons. Opposers allege their belief that DOURTHE is primarily merely a surname and unregistrable under Section 2(e)(3); that DOURTHE is unregistrable under Section 2(c) as well since it is the family name of a well-known wine-producing family in France and applicant is not entitled to register the surname and thus exclude members of the family from using that surname for wine. Opposers further allege that in failing to advise the Examining Attorney that DOURTHE is a surname with no other significance, applicant committed fraud on the Office. Finally, opposers allege that the original applicant Dourthe, U.S.A., Inc. was not the owner of the mark when it filed the application and had no legal basis on which to file the application in its own name.

Applicant denied the salient allegations of the notice of opposition.

Op. No. 70,438

The record consists of applicant's answers to opposers' interrogatories and certain enumerated exhibits filed therewith, a copy of a French document with translation evidencing a change of name of "S.A. Dourthe Freres" to "Consortium Vinicole de Bordeaux et de la Gironde" (CVBG) executed on February 25, 1965 and filed with the Bordeaux Tribunal of Commerce,[2] a copy in French, with translation, of a change of name of "Societe Civile Agricole et Viticole du Domaine de Maucaillou" to "Societe Civile des Domaines Dourthe Freres" dated June 20, 1966,[3] a copy in French and translation of a letter from R. Dourthe to Philippe Dourthe acknowledging the filing of an application to register the mark DOURTHE PERE ET FILS for wine in the National Industrial Property Office (France) and consenting to its use and registration, executed February 22, 1984 and registered in Bordeaux on February 27, 1984, a certificate of label approval issued by the U.S. Bureau of Alcohol, Tobacco and Firearms dated 1983[4] for a label

_____

[2] Opposers assert that the filing with the Bordeaux Tribunal of Commerce occurred on May 12, 1985. Although the French copy of the document contains what appears to be the seal of said tribunal, the date of filing, if it appears thereon, is illegible. Individuals listed as taking part in the activity were Roger Dourthe, Andre Dourthe, Philippe Dourthe and Jean-Paul Jauffret.

[3] Individuals named as shareholders are Andre Dourthe, Jean Roger Dourthe, Jean Philippe Dourthe, et al.

[4] The month and day are illegible.

3

reading "1976 Chateau Maucaillou Wine shipped by Dourthe Freres Bordeaux, France", copies of the files of U.S. trademark applications Ser. No. 526,549 and Ser. No. 526,550 filed for the marks DOURTHE PERE ET FILS and a father and son portrait design, respectively, both for wines and both signed by Philippe Dourthe as an officer, all submitted by opposers under notices of reliance; [5] copies of relevant portions of telephone directories from thirty major U.S. cities offered by applicant under a notice of reliance to show the absence of listings of persons with the

---

[5] Applicant objected in its brief to the letter of consent as hearsay and irrelevant to this proceeding, to the certificate of label approval as hearsay and lacking in probative value regarding use in the U.S., and to the application files as hearsay and self-serving. Further objection was made to all four of these exhibits on the ground that they came into existence subsequent to the filing of the application involved herein. As to the latter objection, it has long been settled that registration must be determined on the basis of the facts as they exist at the time the question is under consideration. See In re Hoffman House Sauce Co., 137 USPQ 486 (TTAB 1963) and Oxford Pendaflex Corporation v. Rolodex Corporation, 204 USPQ 249 (TTAB 1979). Thus, the fact of their coming into being subsequent to the filing of applicant's application has no bearing on the admissibility of the foregoing exhibits. As to the other objections, these documents were not offered for the truth of their contents but merely for what they show on their face. Each document is relevant to the issue of the significance of the mark in question herein. Therefore, applicant's objections are not well taken.

surname Dourthe[6] and copies of pages from a number of
dictionaries offered under opposers' notice of reliance in
rebuttal.[7] Both parties filed briefs and were represented at
the oral hearing held in this matter.

---

[6]Applicant also relied on a copy of a judgment issued on
December 4, 1985 by the General Trial Court of Paris, Third
Division, First Section in an action between the parties hereto.
The relevance thereof, as stated by applicant, is to show that the
French court proclaimed that opposers have no legal right to use
of the trademark or trade name DOURTHE and are in fact enjoined by
the French court from using same in connection with wine.
Opposers objected to this material, in their brief, on the ground
that the judgment is irrelevant to proceedings in the U.S. In
response, applicant asserted that the judgment is relevant insofar
as it exhibits applicant's good-faith belief that it had the
exclusive right to use the DOURTHE mark and its well-founded
belief that opposers had no rights in the mark, either abroad or
in the U.S. Applicant also indicated that the French case has
been appealed to the French Supreme Court. It is well settled
that the findings of a foreign tribunal are not relevant to the
issues in a proceeding concerning the right to register a
trademark in the U.S. See Hiram Walker & Sons, Inc. v. Canadian
Distilleries Ltd., 176 USPQ 156 (TTAB 1972). Even if we were to
consider the court's determination for the purpose of establishing
applicant's good faith belief in its right to file its application
(applicant's second choice as to the document's relevance), the
fact that the decision is not yet final would militate against our
relying thereon for any purpose.

[7]Applicant's motion to strike the material in opposers' notice
as being improper rebuttal is granted since evidence offered to
establish the surname significance of applicant's mark is part of
opposers' case-in-chief. See General Electric Co. v. Graham
Magnetics Incorporated, 197 USPQ 690 (TTAB 1977). However, since
the Board takes judicial notice of material in dictionaries, such
matter found in opposers' notice of reliance has been considered.
See Marcal Paper Mills, Inc. v. American Can Co., 212 USPQ 852
(TTAB 1981).

In its brief, applicant has raised questions regarding opposers' standing to bring this opposition. With respect thereto, it is well settled that the purpose for which inquiry is made as to a party's standing is "to prevent litigation where there is no real controversy between the parties..." See Jewelers Vigilance Committee, Inc. v. Ullenberg Corp., 2 USPQ2d 2021 (Fed. Cir. 1987), citing Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982). All that is necessary is that the opposer have a real interest in the proceeding. It is the Board's opinion that use by a corporate opposer of the challenged term as part of its corporate name in connection with the same or similar goods or services is sufficient to establish said opposer's real interest in a proceeding in which the right to register that term as a trademark indicating source in applicant is to be determined. Apart therefrom, the corporate opposer, in this case, has filed an application to register a mark consisting in part of the term in question, which application has been suspended pending resolution of this opposition. These facts show a sufficient commercial interest in the subject matter of this proceeding to establish the standing of opposer, Dourthe Freres, to pursue this opposition. Having shown such an interest, an

opposer is entitled to rely on any statutory ground that may preclude applicant's right to register.[8]   See Lipton Industries, supra.

On the other hand, there is no evidence of record which would establish that Philippe Dourthe has any interest in the term "Dourthe" except to the extent that it is his surname.  That is, Philippe Dourthe has shown no commercial activity or use of the name on his own behalf but only in terms of his position as a corporate officer of Dourthe Freres.[9]   Thus, Philippe Dourthe has not proved his standing to challenge, as an individual, the application filed by applicant and the opposition must be dismissed as to Philippe Dourthe .

Turning to the merits of this proceeding, we will first discuss the surname allegation.

---

[8] The Board expressed its opinion in the case of Fioravanti v. Fioravanti Corrado S.R.L., 230 USPQ 36 (TTAB 1986), involving a surname issue, that cases on standing to oppose based on Sections 2(e)(1) and 2(e)(2) are unquestionably analogous."  Thus, one's real interest in the question of whether a particular term is registrable in view of the prohibitions of Sections 2(e)(1), (2) or (3) is not dependent upon the challenging party's having previously used that term in connection with the same or similar goods but only with that party's being in a position to use said term in its business activities.

[9] There is considerable argument concerning Mr. Philippe Dourthe's position, expertise and recognition in the wine industry in France.  However, argument is insufficient to establish these facts and there is no probative evidence of Mr. Philippe Dourthe's identity except as a member of the family named Dourthe and an officer of opposer corporation.  Moreover, even if his position in the industry had been proved, it does not establish that Philippe Dourthe has any commercial interest in the mark as an individual performing on his own behalf.

7

Whether or not a term is considered to be primarily merely a surname and unregistrable under Section 2(e)(3) depends upon what is perceived to be the primary significance of that term to the relevant purchasing public. See In re Luis Caballeros, S.A., 223 USPQ 353 (TTAB 1984) and cases cited therein. It is opposer's burden to present a prima facie case showing that DOURTHE is primarily merely a surname. Because of the French origin of the parties involved herein, it is important to note that the relevant purchasing public whose perception is significant herein is the American public. The fact that DOURTHE is recognized as a surname in France has no bearing on its right to be registered in the United States. See In re Wickuler-Kupper-Brauerei, KGaA, 221 USPQ 469 (TTAB 1983).

Opposer has submitted certain exhibits which it received in response to its interrogatories to applicant. These consist of, inter alia, the certificate of incorporation issued by the state of Connecticut to Dourthe, U.S.A., Inc. signed by Pierre Dourthe as an incorporator thereof (Opposer's exhibit 2); advertisements for applicant's wines placed by applicant in a number of publications (Opposer's exhibits 3, 4 and 7) and labels for applicant's wine bottles (Opposer's exhibits 5 and 6). In both Exhibits 3 and 4 next to a picture of several wine

8

bottles is a text saying, among other things, "... For five generations, Dourthe wines have embodied the best in French winemaking. They're unmistakably French wines like Pierre Dourthe Vin Rouge, a smooth, full-bodied red, and Pierre Dourthe Vin Blanc, a dry, crisp white..." In both ads a signature, apparently that of Pierre Dourthe, appears directly on the labels of the bottles of wine which are depicted therein, while to the right of the bottles is the caption "The lovely wines of Pierre Dourthe." According to the interrogatory answers, Exhibit 3 appeared in Sports Illustrated on Sept. 12, 1983 and in various other magazines (primarily in New England) between July 1983 and June 1984 and Exhibit 4 appeared in the Providence Journal, November 18, 1983, and in various other newspapers (primarily in the New England area) during the period July 1984 to June 1985. Opposer's Exhibit 7 is another of applicant's advertisements. In this one, in addition to pictures of applicant's wine bottles (again with the Pierre Dourthe signature across the label), we find the statement, "Dourthe the number one family-owned wine exporters out of Bordeaux" and "Imported by the family that bottles and ships Dourthe Bordeaux Blanc." The label exhibits (5 and 6), again bear the name, Pierre Dourthe, and Exhibit 6 (the rear label) says "This excellent dry table wine comes from France, the world's foremost producer of fine wines, and is produced by the Dourthe

9

family (pronounced Dort) fifth generation exporters of superior wines... Dourthe Vineaux Rouge and ... are both produced in keeping with the quality tradition of the Dourthe family."

It appears from the foregoing, that applicant itself has sought to impress upon the relevant public, i.e., purchasers and users of wine, the significance of the name DOURTHE in the production and distribution of wine. It has promoted its products through ads, of which those previously noted are illustrative, in magazines, newspapers, store promotions and billboards. Between July of 1983 and June of 1985, applicant spent $1,400,000 for such advertising and promotion. Although applicant did not provide sales figures, it is likely in view of its advertising expenditures that it had substantial sales during that same period. We find it difficult to believe that the relevant public could ignore the obvious references to DOURTHE as the name of a particular family reinforced by the appearance in the advertisements and on the labels of the name and/or signature of one individual named Pierre Dourthe. We conclude that opposer has presented a prima facie case that the primary meaning of DOURTHE is that of a surname. Moreover, opposer's case is buttressed by the various dictionaries (of which, as previously stated we may take judicial notice) evidencing the absence of any other meaning for the term.

10

Applicant's evidence in response to opposer's case consists of copies of relevant pages from the telephone directories of thirty major cities in the United States in which there is not a single listing for DOURTHE. However, this negative evidence is insufficient to rebut opposer's prima facie case. Rather, it is incumbent on applicant to show that DOURTHE has some other meaning which is well enough known to the public that it cannot be said that the primary significance thereof is that of a surname. This applicant has failed to do.

Apart from the foregoing, applicant has admitted that Dourthe is a surname (see answers to Interrogatories No. 39 and 41) although asserting that it is a surname only in France and that, even there, it is rare. However, in view of applicant's advertising efforts which appear to be intended to impress upon the relevant purchasing public the significance of the DOURTHE name in connection with the wine industry and its origin with the French family of that name, we cannot give credence to applicant's argument that DOURTHE has surname significance only in France. In the absence of any other known meaning for the term, it is doubtful that the public would consider it to be anything other than a surname. Rare surnames are no more registrable on the principal register than others which are commonly used. See In re Etablissements Darty et Fils, 759 F.2d 15, 225 USPQ 652 (Fed. Cir. 1985).

11

Under Section 2(c) of the Trademark Act, no trademark which distinguishes applicant's goods from like goods of others may be refused registration on the principal register on account of its nature unless it

> Consists of or comprises a name, portrait, or signature identifying a particular living individual except by his written consent...

Opposer's pleading does not allege that DOURTHE is the name of a particular living individual but that it is the surname of a well-known family in France. While surnames may be unregistrable under Section 2(e)(3), Section 2(c) does not apply to surnames except in those cases where a particular individual is known by a surname alone. Since that is not the case here, opposer has failed to show that applicant's mark is unregistrable under Section 2(c).

As to the allegation that applicant committed fraud by failing to advise the Examining Attorney that DOURTHE is a surname with no other significance, we note that in the examination process it is the burden of the Examining Attorney to prove that a mark is primarily merely a surname. See In re Wickuler-Kupper-Brauerei, supra. The burden shifts to the applicant only after a prima facie case has been made by the Examining Attorney. In this case, the surname question was raised in the first Office action and withdrawn,

apparently because the Examining Attorney found no evidence to support the rejection. Applicant does not have a burden to support the Examining Attorney's position. Moreover, applicant clearly stated in its response that while there may be someone somewhere in the world whose surname is the same as a designation sought to be registered as a word mark, that does not render such a mark "primarily merely a surname". Opposer has not proved its fraud allegation.

Finally, opposer alleges that the original applicant Dourthe, U.S.A., Inc. did not own the mark at the time the application was filed and concludes that the application is therefore void ab initio.

Dourthe, U.S.A., Inc. filed the application on February 9, 1981, claiming first use of the mark DOURTHE on June 1, 1980 for wines. The specimens of record indicate that applicant imported the wine from Dourthe Freres, Bordeaux, France.[10] A question of ownership of the mark as between applicant and the foreign producer of the goods was raised in the Office action of January 25, 1982. In response, applicant filed a copy of an assignment

_____

[10] There is a document of record showing the change of name of Dourthe Freres to Consortium Vinicole de Bordeaux et de la Gironde (CVBG) on February 25, 1965.

13

of the application to CVBG.[11]  The Examining Attorney then inquired "whether applicant/importer is a related company of the foreign manufacturer... or if, prior to the filing date of this application..., applicant had obtained an assignment of the U.S. rights in the mark together with the business and good will appurtenant thereto or written consent from the owner to register the mark in the United States."  It was stated by the Examining Attorney that applicant/importer apparently had no ownership rights to convey to the assignee.  Applicant then informed the Examining Attorney that since applicant was the only party to have used the mark in the United States it had acquired the right to register, and that the specimen labels, applied to the wine bottles in France, are used only for applicant.  Finally, applicant stated that it is a wholly owned subsidiary of CVBG, the foreign vintner and while applicant, as sole user in the United States, has acquired the right to register, applicant's use inures to its parent's benefit and the assignment of applicant's rights to the parent is no more than a housekeeping matter.  The Examining Attorney then suspended action on the application pending recordation of the assignment, following which the mark was published for opposition.

Opposer argues that there is presumption that a distributor of a foreign producer's goods does not have the right

---

[11] Because there was no domestic representative named, the document was refused recordation.  Applicant explained the foregoing and indicated that it would file a new assignment. Subsequently, on April 22, 1983, applicant filed a new assignment executed on March 25, 1983 which was recorded June 27, 1983.

to apply for registration in the absence of an agreement between the parties, citing In re Eucryl Limited, 193 USPQ 377 (TTAB 1976). While recognizing that, with respect to parent-subsidiary relationships, the determination as to who should apply for registration is generally left to the parties and that it is possible for the use of a mark in such a situation to inure to the benefit of the parent or of the subsidiary, opposer notes that the TMEP Section 1201.02 states, inter alia, that the use of the mark inures to the benefit of the party which does the controlling and is thereby the owner of the mark. It is concluded by opposer that because applicant's wine is produced in and emanates from France at CVBG's French location, it does not appear that Dourthe, U.S.A., being a United States distributor and a Connecticut corporation, could properly exercise control over the nature and quality of the wines marketed under the DOURTHE designation. Opposer notes, in further support of its position, applicant's statement in its December 8, 1982 response to the Examining Attorney that "while applicant as the sole user of the mark in the United States, has acquired the right to register, applicant's use inures to the benefit of its parent company...".

As opposer contends, a U.S. distributor of goods manufactured by a foreign producer does not acquire the right of ownership in the manufacturer's mark merely by virtue of its

15

activity as the importer and seller of the foreign producer's goods, and, without the right of ownership, the distributor may not apply to register the mark. The exception is where the U.S. importer or distributor places in the record an assignment of ownership rights in the mark for the U.S. (including the business and goodwill), a written consent to registration in the importer's name, or, a written agreement or acknowledgment between the parties that the importer is to be the owner of the mark in the United States. See TMEP §1201.04(a) and cited cases.

This case, however, involves more than simply an importer/ producer situation. The parties here are in the position of parent/subsidiary.[12] In a parent/subsidiary situation, the owner of the mark is not always the parent. Which is to be considered the owner is dependent upon the particular situation which exists between them. Quoting from the TMEP §1201.02(b), "... in this area, where a full knowledge of the arrangements between the parties and the legal conclusions to be drawn therefrom, are primarily the responsibility of the parties rather than the Office, the decision as to whether the parent or the subsidiary is to be regarded as owner of a mark for purposes of

---

[12] This case differs also from In re Eucryl supra, cited by opposer. In that case, both the foreign manufacturer of the goods and the U.S. distributor thereof were independent entities which happened also to be subsidiaries of the same parent.

registration should be made between the parties themselves." Thus, applicant/ assignee (CVBG), parent of the applicant/ assignor (Dourthe, U.S.A.) has expressed its position that the applicant/assignor had the right to register at the time the application was filed. Opposer's arguments to the contrary cannot alter the arrangement between these related parties.

In view of the foregoing, the opposition is dismissed as to Philippe Dourthe but is otherwise is sustained. Registration to applicant is refused.

J. D. Sams

L. E. Rooney

R. L. Simms
Members, Trademark
Trial and Appeal Board

JAN 2 5 1988

17