```
THIS OPINION IS A
PRECEDENT OF
THE T.T.A.B.
```

Mailed:  August 28, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————————

**Trademark Trial and Appeal Board**

————————

In re Joint-Stock Company "Baik"

————————

Serial No. 78521961

————————

James C. Wray of Law Offices of James C. Wray for Joint-Stock Company Baik.

Sean Crowley, Trademark Examining Attorney, Law Office 116 (Michael W. Baird, Managing Attorney).[1]

————————

Before Seeherman, Quinn and Cataldo,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

On November 23, 2004, Joint-Stock Company Baik (applicant) filed an application to register the mark BAIK on the Principal Register in standard character form for "vodka" in International Class 33.  Applicant asserts a bona fide intention to use the mark in commerce as its basis for registration.

———————————————

[1] This application originally was assigned to a different examining attorney and was reassigned after issuance of the first Office action to the examining attorney whose name appears above.

The examining attorney refused registration on the ground that the mark is primarily merely a surname under Section 2(e)(4) of the Trademark Act, 15 U.S.C. §1052(e)(4). When the refusal was made final, applicant appealed. Applicant and the examining attorney have filed main briefs on the case. In addition, applicant has filed a reply brief.

We reverse.

Section 2(e)(4) of Trademark Act precludes registration of a mark which is "primarily merely a surname" on the Principal Register without a showing of acquired distinctiveness under §2(f) of the Act, 15 U.S.C. §1052(f). We must decide on the facts of each case whether the mark at issue is "primarily merely a surname" under the Act. *See In re Etablissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985). The examining attorney bears the initial burden to make a prima facie showing of surname significance. *See Id.* If the examining attorney makes that showing, then we must weigh all of the evidence from the examining attorney and the applicant, to determine ultimately whether the mark is primarily merely a surname. *See In re Sava Research Corp.*, 32 USPQ2d 1380, 1381 (TTAB 1994). If there is any doubt, we must resolve the doubt in

favor of applicant. *See In re Benthin Management GmbH*, 37 USPQ2d 1332, 1334 (TTAB 1995).

In *Benthin*, the Board identified five factors, four of which are relevant here, to consider in determining whether a mark is primarily merely a surname: (1) the degree of the surname's "rareness"; (2) whether anyone connected with applicant has the mark as a surname; (3) whether the mark has any recognized meaning other than as a surname; and (4) whether the mark has the "look and feel" of a surname. *Id*. at 1332-33. Because BAIK is in standard character form, we need not consider the fifth *Benthin* factor here, that is, whether the manner in which the mark is displayed might negate any surname significance.

Rareness

With the first Office action, the examining attorney provided a summary and partial listing of 456 individuals having "Baik" as a surname, retrieved by a search of the Verizon superpages.com computer database. In that action, the examining attorney stated that "Baik appears to be a relatively rare surname…." (first Office action, p. 2). Based upon such evidence, however, Baik appears to be an extremely rare surname. With the final Office action, the examining attorney submitted four stories, one financial abstract and four "screenshots" from the Lexis/Nexis

computer database concerning individuals with the surname Baik. In that action, the examining attorney stated that "the surname Baik commonly appears in newspapers and other media." (final Office action, p. 2). We note, however, that three of the four "screenshots" are bankruptcy notices concerning individuals with the surname Baik while the fourth displays several listings of the same financial report, filed by an individual with the surname Baik. The report, from Nelson's Research Report Headlines, contains financial information regarding Isu Chemical Co. and lists an individual named Baik as the reporting analyst in the body thereof. Such bankruptcy notices and the financial report are not as widely read as articles for general circulation and do not support a finding that the public has been widely exposed to Baik as a surname. With regard to the articles, two are from trade papers (New Jersey Law Journal and Pennsylvania Law Weekly) that similarly would appear to have limited readership. The two remaining articles appear in general circulation newspapers (The Indianapolis Star (Indiana) and Los Angeles Times). However, in all cases the name Baik is buried in the text of the articles and would be likely to go unnoticed by most readers. Thus, while the Lexis/Nexis evidence suggests that Baik appears as a surname in printed media, these nine

4

articles fall far short of supporting the examining attorney's contention that "the surname Baik commonly appears in newspapers and other media," or a finding that Baik is well recognized as a surname. Nor does such evidence support a finding that the number of individuals with Baik as a surname is any higher than was suggested by the evidence submitted with the first Office action.

As a result, on this record, we conclude that Baik is an extremely rare surname. In concluding so, we rely on the fact that only 456 examples of the Baik surname were located from a comprehensive directory of the entire United States. *See In re Sava Research Corp., supra* at 1381; and *In re Garan Inc.*, 3 USPQ2d 1537, 1540 (TTAB 1987).

Applicant's Surname Use

The examining attorney acknowledges that "the record does not reveal any connection" (brief, p. 6) between the surname Baik and anyone associated with applicant. Applicant confirms in its reply brief (p. 4) that Baik "is not the surname of anyone connected with the applicant." As a result, this point is neutral, and does not support either applicant or the examining attorney.

Other Meanings

The examining attorney argues that BAIK has no meaning other than as a surname and offers with the final Office

action dictionary evidence from Dictionary.com, Microsoft Encarta, and Merriam-Webster OnLine in support of this position. Applicant asserts that BAIK is "an arbitrary Russian sounding word mark that has no meaning to consumers of the Applicant's goods." (brief, p. 2). However, applicant goes on to argue that the "term sounds similar to Baikal, a Russian lake in Siberia" (reply brief, p. 5) and the Baikal mountain range in Siberia. (*Id*.) Applicant further argues that BAIK "is promoted along with the words 'Vodka Siberia'" (*Id*.) and that, as a result, the "primary significance of the mark to the purchasing pubic is as a fanciful Russian term used in a trademark sense…." (*Id*.) In support of its contention, applicant submits with its reply brief an entry for Baikal Lake, from the printed reference work Encyclopedia International (1979), which describes it as the deepest body of fresh water in the world, located in Siberia.[2]

    We accept applicant's representation that BAIK is a coined term, particularly because there is no evidence that the term has any recognized meaning.[3] Furthermore, we agree

---

[2] We hereby take judicial notice of this entry. *See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982); *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[3] Applicant argues, without evidentiary support, that BAIK has a meaning in the Malay language. Inasmuch as applicant has not

with applicant that BAIK, even though a coined term, sounds like a word in the Russian language. We also agree that the mark evokes or sounds similar to the word "Baikal," which has a recognized geographic significance, denoting a lake and mountain range in the Siberian region of Russia. Thus, while this is unlike cases where the mark *is* a recognized foreign term, or a mark *derived from* allegedly recognized foreign terms, the evidence of record nonetheless supports applicant's contention that BAIK sounds like a Russian language term. *Cf. In re Picone*, 221 USPQ 93, 94 (TTAB 1984); and *In re Carl Braun, Camerawerk*, 124 USPQ 184, 185 (TTAB 1960).

Further, we note the absence of evidence that any person with the Baik surname has achieved any notoriety. *Cf. In re Gregory*, 70 USPQ2d 1792, 1795 (TTAB 2004) (evidence of public figures with surname Rogan found supported conclusion that public would perceive Rogan as a surname).

Look and Feel

Lastly we must consider whether BAIK has the "look and feel" of a surname. As to this factor, the examining

---

submitted any evidence in support of this contention, we will give it no further consideration in our determination herein. We note, nonetheless, that it is unlikely consumers would be sufficiently conversant in the Malay language to understand any such meaning.

attorney argues that BAIK has the look and feel of a surname because the evidence of record "established that the proposed mark does not have any primary recognition other than that of a surname." (brief, p. 7) Applicant argues, instead, that "BAIK has the appearance and sound of an acronym or made-up Russian-sounding nonsense word." (reply brief, p. 6)

We reject the examining attorney's argument that the mere fact that a mark may not have any recognized meaning other than that of a surname imbues the mark with the "look and feel" of a surname. As discussed above, BAIK may not have a defined meaning; nonetheless the term gives the appearance of a word in the Russian language and evokes the Baikal region of Siberian Russia. In addition, in a case such as this involving a very rare surname, we cannot assume that the purchasing public will view the mark as a surname based on exposure to the surname use. *See In re Garan Inc., supra* at 1540. It is in the case of a rare surname that we need to weigh "look and feel" carefully. For example, certain surnames, though rare, resemble common surnames "in their structure and pronunciation." *See In re Industrie Pirelli Societa per Azioni*, 9 USPQ2d 1564, 1566 (TTAB 1988). However, we see no evidence that such is the case with BAIK. *Cf. In re United Distillers plc, supra* at

8

1221. In this case, there is no evidence that relevant purchasers would perceive BAIK as a surname.

In further support of the refusal to register, the examining attorney introduced evidence with the final Office action from the Yahoo People Search computer database to show that "more common" surnames, such as "Paik" and "Bak," are similar in appearance and sound to BAIK. We note, however, that such evidence reveals approximately 800 individuals with the surname "Paik," less than 900 with the surname "Naik," and 1100 with the surname "Bak." As such, the examining attorney's own evidence only suggests that the extremely rare surname Baik is similar to surnames that are almost as rare, i.e., fewer than 3,000 other people in this country. Thus, we are not convinced that the similarity of Baik to other obscure surnames somehow results in Baik having the "look and feel" of a surname.

In sum, based on the record in this case, we conclude that the examining attorney has failed to meet the burden of establishing a prima facie case that BAIK is primarily merely a surname. Accordingly, we conclude that BAIK is not primarily merely a surname. Furthermore, and as noted above, we must resolve any doubt in favor of applicant. *See In re Benthin Management GmbH*, 37 USPQ2d at 1334.

9

**Decision**: The refusal to register applicant's mark on the ground that it is primarily merely a surname is reversed.

Seeherman, Administrative Trademark Judge, concurring:

I add this concurring opinion to express my views about the way the "look and feel" factor should be interpreted in assessing whether a mark is primarily merely a surname. The statute provides that a mark should be refused registration not if it is a surname, but if it is primarily merely a surname. As a result, a mark such as HILL, which can be a surname, is registrable without resort to Section 2(f) because it has another meaning. I believe the "look and feel" factor should have the same effect. That is, if a term does not have the "look and feel" of a surname, it should not be refused registration even if there is evidence to show that it is, in fact, a surname.

However, I do not think that, in the converse situation, registration should be refused simply because the mark at issue is similar in sound or appearance to other surnames. The purpose behind prohibiting the registration of marks that are primarily merely surnames is not to protect the public from exposure to surnames, as though there were something offensive in viewing a surname. Rather, the purpose behind Section 2(e)(4) is to keep

surnames available for people who wish to use their own surnames in their businesses, in the same manner that merely descriptive terms are prohibited from registration because competitors should be able to use a descriptive term to describe their own goods or services.[4]

Because the purpose of Section 2(e)(4) is not to protect the public from being exposed to surname marks, the fact that the public may view a mark as a surname because it has the "look and feel" of a surname should not be the basis for refusing registration of rare surnames. If a surname is extremely rare, it is also extremely unlikely that someone other than the applicant will want to use the surname for the same or related goods or services as that of the applicant. Therefore, if the Office is not able to muster sufficient evidence to show that the mark is the surname of a reasonable number of people, and must instead resort to finding other surnames which rhyme with the mark or differ from the mark by one or two letters, I believe that it is not proper to refuse registration. Interpreting the "look and feel" factor to refuse registration of marks

---

[4] *See Kimberly-Clark Corp. v. Marball*, Comr. Pats., 94 F. Supp 254, 88 USPQ 277, 279 (D.D.C. 1950) ("The spirit and the intent of the entire Act indicate that Congress intended to codify the law of unfair competition in regard to the use of personal names as it has been developed by the courts. ... At common law it was held that every man had an absolute right to use his own name.").

simply because they are similar to recognized surnames does

not serve the intention of the statute.