This Opinion is a Precedent of
the TTAB

Mailed:
September 27, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Eximius Coffee, LLC*

_____

Serial No. 86262060

_____

John S. Egbert of Egbert Law Offices PLLC
    for Eximius Coffee, LLC.

Charles H. Hiser IV, Trademark Examining Attorney, Law Office 112,
    Angela Bishop Wilson, Managing Attorney.

_____

Before Kuhlke, Cataldo and Heasley, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Applicant, Eximius Coffee, LLC, filed an application to register on the Principal Register the standard character mark ALDECOA for goods identified as "coffee, caffeine-free coffee, instant coffee, single serve coffee," in International Class 30.[1]

Registration has been refused under Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4), on the ground that ALDECOA is primarily merely a surname.

---

[1] Application Serial No. 86262060 was filed on April 24, 2014, under Section (1)(b) of the Trademark Act, 15 U.S.C. § 1051(b). Subsequently, on March 10, 2015, Applicant filed an amendment to allege use based upon Applicant's allegation of first use and first use in commerce on January 1, 2015, which was accepted on March 13, 2015.

When the refusal was made final, Applicant filed an amendment to allege use to make the application eligible for registration on the Supplemental Register, but did not separately request an amendment to the Supplemental Register. After the amendment to allege use was accepted, Applicant filed this appeal, which is fully briefed. In its appeal brief, Applicant requested in the alternative that the application be remanded after final decision for amendment to the Supplemental Register. However, as the Board explained in its August 1, 2016 order, once the Board has issued its final decision in an *ex parte* appeal, an examining attorney is without jurisdiction to take any further action, and the Board has no authority to remand the case to the examining attorney for further examination. A case that has been considered and decided on appeal to the Board may be reopened only as provided in Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g). Therefore, to give effect to Applicant's intentions during prosecution of its application, the Board, in its August 1, 2016 order, remanded the application for consideration of the amendment in the alternative to seek registration on the Supplemental Register. On August 9, 2016, the Examining Attorney accepted the amendment in the alternative to the Supplemental Register, and jurisdiction was restored to the Board for consideration of Applicant's appeal from the refusal of registration on the Principal Register. We affirm the refusal to register on the Principal Register.

Section 2(e)(4) of the Trademark Act precludes registration of a mark on the Principal Register which is "primarily merely a surname" without a showing of acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f). A term is

primarily merely a surname if, when viewed in relation to the goods or services for which registration is sought, its primary significance to the purchasing public is that of a surname. *See In re United Distillers plc*, 56 USPQ2d 1220 (TTAB 2000). *See also In re Hutchinson Tech. Inc.*, 852 F.2d 552, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988). This expression of the test restates the rule set forth in *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 184 USPQ 421, 422 (CCPA 1975) ("[A] correct resolution of the issue can be made only after the primary significance of the mark to the purchasing public is determined …") and *In re Etablissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985). In *Darty*, the Federal Circuit considered several factors in determining whether the purchasing public would perceive a proposed mark as primarily merely a surname, including: whether the applicant adopted a principal's name and used it in a way that revealed its surname significance; whether the term had a nonsurname "ordinary language" meaning; and the extent to which the term was used by others as a surname. 225 USPQ at 653. The Board's oft-cited "*Benthin* factors," *see In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1333-34 (TTAB 1995), are also examples of inquiries that may lead to evidence regarding the purchasing public's perception of a term's primary significance.[2] These "factors" are not exclusive and any of these circumstances –

---

[2] In *Benthin*, the Board stated that "factors" to be considered in determining whether a term is primarily merely a surname include (1) the degree of a surname's rareness; (2) whether anyone connected with applicant has that surname; (3) whether the term has any recognized meaning other than that of a surname; (4) whether the term has the "structure and pronunciation" of a surname; and (5) whether the stylization of lettering is distinctive enough to create a separate commercial impression. Where, as here, the mark is in standard characters, it is unnecessary to consider the fifth factor. *In re Yeley*, 85 USPQ2d 1150, 1151 (TTAB 2007).

singly or in combination – and any other relevant circumstances may shape the analysis in a particular case.[3]

When we are faced with a Section 2(e)(4) refusal of a term in standard character form, with no other literal or design elements, we consider the impact the applied-for term has or would have on the purchasing public because "it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, *and it is only that*, then it is primarily merely a surname." *In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975) (quoting *Ex parte Rivera Watch Corp.*, 106 USPQ 145, 149 (Comm'r Pat. 1955)) (emphasis in original).

Whether the primary significance of an applied-for mark is merely that of a surname is a question of fact. *See Darty*, 225 USPQ at 653-54. There is no rule as to the kind or amount of evidence necessary to show that the applied-for mark would be perceived as primarily merely a surname. This question must be resolved on a case-by-case basis. *Id.* at 654; *see also, e.g., In re Pohang Iron & Steel Co.*, 230 USPQ 79, 79 (TTAB 1986). The entire record is examined to determine the primary significance of a term. If there is any doubt, we "are inclined to resolve such doubts in favor of applicant." *Benthin*, 37 USPQ2d at 1334.

---

[3] *See Benthin*, 37 USPQ2d at 1333 (stating that notwithstanding the rareness of BENTHIN as a surname, panel "would find" that it "would be perceived as primarily merely a surname" because of lack of other meanings and because it is the name of applicant's Managing Director, but the highly stylized form shifted the balancing of factors to a finding that BENTHIN is not primarily merely a surname).

As noted earlier, among the circumstances that may be probative in determining if a mark is primarily merely a surname are:

> whether the term is the surname of anyone connected with the applicant;
>
> whether the term has any recognized meaning other than as a surname;
>
> whether evidence shows that the term has the structure and pronunciation of a surname; and
>
> whether the evidence shows use of the term as a surname is rare.

*Benthin*, 37 USPQ2d at 1333-34. Because the Examining Attorney and Applicant focused their arguments on these issues, we review each in turn, but in making our determination we weigh them together and accord the appropriate weight to each one based on the evidence of record.[4]

*Whether ALDECOA is the Surname of Anyone Connected with Applicant*

The Examining Attorney submitted pages from Applicant's website shown in part below that "traces the Aldecoa family's history in coffee back three generations [and] notes the current generation of coffee brewers also shares the same surname..."[5] Ex. Att. Br., 6 TTABVUE 6.

---

[4] No other factors are discussed, nor is there evidence that implicates the probative significance of any other possible factor or circumstance.

[5] August 11, 2014 Office action p. 5.

About Eximius

Eximius Coffee, LLC, is the culmination of 3 generations of expertise and participation in the global coffee trade. The roots of the firm can be directly traced to 1925 in Madrid, Spain, when it was founded by Carlos de Aldecoa Fernandez. He later expanded operations to the fertile lands of Veracruz, Mexico, where the business grew to include coffee farms, roasting, retailing and decaffeination.

The founder's son, Carlos de Aldecoa Pereda,Carlos de Aldecoa Pereda, grew up with the business, and further expanded operations, eventually moving the business to Houston, Texas in 1985. Soon the family's operations developed into the largest independently owned decaffeination company in the United States of America, and currently produces over 800,000 pounds of UVVW DECAFF® monthly.

Mr. and Mrs. de Aldecoa continue their daily involvement with the companies. The 3rd generation, along with a staff of seasoned professionals, has now assumed leadership roles in the company.

Eximius Coffee, LLC, was formed as the sales arm representing the extensive manufacturing, processing and importing capabilities of the organization. Carlos and Maria's new generation are now responsible for the business.

Eximius Coffee, LLC sources the finest coffees from around the world and can deliver to you – from small-order to bulk – green, roasted and UVVW DECAFF® coffees specialized to meet your specific requirements. If we don't have it, it hasn't been grown yet!

The Board particularly notes the following passage:

> Mr. And Mrs. de Aldecoa continue their daily involvement with the companies. The 3rd generation, along with a staff of seasoned professionals, has now assumed leadership roles in the company.[6]

The Examining Attorney also points to Applicant's specimen of use shown below[7] wherein the phrase "Premium Family Coffee" sits below ALDECOA, reinforcing its surname significance. The specimen also includes "the city crest of the town of Ronda, Spain and the date of when Carlos de Aldecoa Fernandez founded the family business." Ex. Att. Br., 6 TTABVUE 6.

---

[6] *Id.*

[7] March 10, 2015 Amendment to Allege Use.



"This, in itself, is highly persuasive that the public would perceive [the mark] as a surname." *Darty*, 225 USPQ at 653 (Court noted use of DARTY in "Darty et Fils translates as Darty and Son"). *See also Miller v. Miller*, 105 USPQ2d 1615, 1620 (TTAB 2013) ("That Applicant's name is MILLER strengthens the inference that the public will perceive the term as a surname.").

Applicant argues:

> While the persons responsible for the creation of the beginning of what resulted in the current business enterprise did have the term "ALDECOA" in their surname, this fact is not and should not be determinative of the outcome of this case. It seems appropriate to also bring up in this section the fact that the actual surname of the "roots" of this company is not "Aldecoa," but is instead "de Aldecoa." While a minor difference, it is certainly worth mentioning since the surname test does not mention whether minor differences are irrelevant. One thing that is certain, however, is that the fact that the founders of the present company having the "ALDECOA" as part of their name does not in any way show whether the American public would perceive the "ALDECOA" mark as "primarily merely a surname."

> Indeed, most of this history was developed within Spain and Mexico, and no evidences [sic] would show the public would perceive the name as primarily merely a surname within the United States.

App. Br. 4 TTABVUE 11-12.

We find the evidence pertaining to the connection of Applicant's name to the goods persuasive of consumer perception of ALDECOA as a surname. Consumers are exposed to the surname significance prominently on Applicant's website and packaging. Thus, whether offering its goods online or in the store, Applicant is educating consumers as to the surname significance of ALDECOA. Moreover, Applicant's website indicates that ALDECOA is not simply the name of the historical founder of Applicant's business at some time in the past. Rather, ALDECOA identifies individuals who have been continuously involved in the business and presently are active participants in the daily operation and leadership of the company. Furthermore, there is no evidence in the record to show the meaning of "de" and whether its omission would affect consumer perception of ALDECOA as a surname. Given Applicant's own presentation of ALDECOA with the phrase "Premium Family Coffee" on the packaging, the evidence of record refutes Applicant's argument. Moreover, the evidence of record discussed below shows use of ALDECOA without the "de," showing consumer exposure to ALDECOA as a surname.

*Whether ALDECOA Has Any Recognized Meaning Other Than as a Surname*

There is evidence showing that ALDECOA does not have any recognized meaning other than as a surname. The excerpt from Rhymezone.com submitted by

the Examining Attorney lists it as a surname, albeit a "very rare" one.[8] In addition, the Examining Attorney submitted a search result from SpanishDict.com showing no results for ALDECOA.[9] The evidence that ALDECOA has no other recognized meaning further supports the Examining Attorney's case that its primary significance is as a surname. *See In re Isabella Fiore LLC*, 75 USPQ2d 1564, 1566 (TTAB 2005).

*Whether ALDECOA Has the Structure and Pronunciation of a Surname*

Assessing whether ALDECOA has the structure and pronunciation of a surname is a "decidedly subjective" inquiry. *Benthin*, 37 USPQ2d at 1333; *see also Binion*, 93 USPQ2d at 1537. Applicants and examining attorneys may submit evidence that, due to a term's structure or pronunciation, the public would or would not perceive it to have surname significance.

The Examining Attorney offered no evidence to support his argument that "ALDECOA does follow some of the same linguistic patterns of other, more common, Hispanic surnames like Figueroa and Ochoa." Ex. Att. Br., 6 TTABVUE 7. As Applicant points out, because there is no evidence of the structure of this surname " there can be no comparisons made to other surnames that might show this term has a particular 'structure' that is often found in surnames." App. Br., 4 TTABVUE 12.

The Examining Attorney's reference to two purported surnames -- without proving that they are surnames, without showing how common such surnames with the suffix "OA" are, and without providing some other objective evidence of how

---

[8] August 11, 2014 Office action p. 4.

[9] *Id.* pp. 6-8.

members of the public perceive the structure and sound of ALDECOA -- is not sufficient to enable us to determine that ALDECOA has a structure and pronunciation similar to that of other purportedly common surnames.

*Whether ALDECOA Is Rarely Encountered As a Surname*

During prosecution, the Examining Attorney submitted excerpts from the 2000 U.S. Census showing 233 people with the surname ALDECOA.[10] Search results of public records from the Lexis public records database show approximately 950 listings for the surname ALDECOA in the United States.[11] Applicant questions that number, noting that "only the last page of [the search] was attached to the Final Official [sic] Action, making it impossible to see how many of the entries are duplicates. Interestingly, Applicant notes that the one page that has been attached appears to contain two sets of duplicate entries …." App. Br., 4 TTABVUE 9. We agree that the probative value of the Lexis listings is limited for the reasons stated by Applicant. In addition, the excerpt from Rhymezone.com listing ALDECOA as a surname includes the notation that it is "very rare: popularity rank in the U.S.: #58814."[12]

The evidence tends to show that ALDECOA is a surname, but one that is rarely encountered by the consuming public. *See United Distillers*, 56 USPQ2d at 1221 ("Hackler" held to be a rare surname despite 1295 listings in phone

---

[10] August 11, 2014 Office action pp. 2-3.

[11] March 3, 2015 Office action p. 2.

[12] August 11, 2014 Office action p. 4.

directories). The Examining Attorney also points to a few excerpted materials retrieved from the internet showing use of ALDECOA as a surname in various newspaper articles from across the United States.[13] The examples include: *Portland Press Herald* (October 13, 2012) ("The Rangers resume their winning ways, dominating the Seagulls on a blustery evening … using Corey Aldecoa's touchdown runs …"); *The Baltimore Sun* (April 20, 2014) ("Diana Aldecoa, director of grass-roots events at the foundation, said the money for lung cancer research is vital."); *Detroit Free Press* (July 11, 2014) ("Mary Aldecoa, an algebra teacher, said the alleged poisoning left her with 'horrible symptoms,' including severe stomach pains and headaches that kept her …"); *The Washington Post* (June 27, 2014) ("Ms. Matute and other writers scarred by the 1936-1939 war – Juan Goytisolo, Ignacio Aldecoa, Carmen Martin Gaite and Carmen Laforet – were dubbed the generation of the frightened children."); *Naples Daily News* (May 20, 2013) ("Joe Wasilewski, Mario Aldecoa and Bob Freer, from left to right wrestle with the snake in the rafters of a Marco Island Executive Airport hangar … Bernice [the snake] will be displayed at Everglades Outpost for educational purposes for the rest of her life. Aldecoa said she would make a good display snake because she is aggressive and doesn't mind striking at an outstretched finger."); *The Idaho Statesman* (September 6, 2013) ("Who's Doing What for Business Insider's Sept. 10-16 edition … Brandon James Aldecoa …").

We find that these examples are the type of evidence that can be probative and aid analysis because they show public exposure to ALDECOA used as a

[13] August 11, 2014 Office action and March 3, 2015 Office action.

11

surname. However, we find that these few examples do not reflect the broad exposure that would place a rarely encountered surname more frequently in the public eye. *See In re Gregory*, 70 USPQ2d 1792, 1795 (TTAB 2004) (ROGAN primarily merely a surname based in part on broad exposure of public to politician, athletes, actor and author with this surname); *see also Sava Research*, 32 USPQ2d at 1381; and *In re Garan Inc.*, 3 USPQ2d 1537, 1540 (TTAB 1987).While the fact that ALDECOA appears to be a relatively rare surname weighs in Applicant's favor, it does not end the inquiry. Section 2(e)(4) makes no distinction between rare and commonplace surnames, *see In re Picone*, 221 USPQ 93, 95 (TTAB 1984), and even a rare surname is unregistrable if its primary significance to purchasers is a surname. *See In re E. Martinoni Co.*, 189 USPQ 589, 590-91 (TTAB 1975) (holding LIQUORE MARTINONI (stylized) for liqueur primarily merely a surname, with "liquore" being the Italian word for "liqueur," and stating: "The fact that 'MARTINONI' may be a rare surname does not entitle it to treatment different from what would be accorded to a common surname when no other meaning for the word is shown."). *See also In re Adrian Giger and Thomas Giger*, 78 USPQ2d 1405, 1408 (TTAB 2006) ("[T]he fact that a term is not a common surname does not mean that a surname would not be considered to be primarily merely a surname.") and *In re Industrie Pirelli Societa per Azioni*, 9 USPQ2d 1564, 1566 (TTAB 1988), *aff'd*, 883 F.2d 1026 (Fed. Cir. 1989).

Relying on several published and unpublished Board decisions and concurring opinions, Applicant argues that an "extremely rare surname" cannot be

"primarily merely a surname." Applicant specifically points to a concurring opinion suggesting that extreme rareness alone without looking to other circumstances is a sufficient basis on which to find a mark registrable. App. Br. 4 TTABVUE 10 (quoting *In re The Hyman Cos. Inc.*, Serial No. 85483695 (concurring opinion) (TTAB June 4, 2014)). Applicant expands on its argument:

> Applicant respectfully requests that the Board consider the public policy reasoning behind Congress's creation of restrictions to obtaining registration of a mark that is also a surname. Unlike other types of rejections – likelihood of confusion, misdescriptiveness, scandalous – a surname refusal does not exist to protect the consumer. Instead, it is there to ensure that other U.S. businesses or individuals can use their surnames in the marketplace. If there are only 100 to 300 persons with a particular surname in the U.S., who exactly does the law created by Congress protect if such rare surnames are refused registration on the Principal Register if the surname has not acquired distinctiveness? If a term is considered rare, having Examiner's [sic] go through the remaining factors only ensures that more appeals to this Board must be made, while doing nothing whatsoever to advance the stated policy goals of Congress. The mark is still rare when looking at the additional factors. It does not matter if someone connected with Applicant has the surname at issue, if there is a recognized meaning other than a surname, of [sic] if the term has the "look and feel" of a surname. That information does not change the fact that there are virtually no other businesses or individuals that would need to use the rare surname in the marketplace. The other factors should only be relevant to those surnames that are determined by the evidence to be quite common. Common surnames create a unique issue that Congress wished to address – the assurance that other U.S. businesses or individuals can use their surnames in the marketplace. …
>
> As a matter of public policy and judicial efficiency, it would seem to be in the best interests of the Board to also make a hard and fast rule on this issue since it would create less need for Applicant's [sic] to appeal adverse

> surname decisions. At this time, it completely depends on which set of opinions from the Board an Examiner decides to base his or her decision on as to whether an appeal will be necessary. Applicant argues that stopping the analysis on the first factor for rare surnames or extremely rare surnames would meet the public policy reason for having such a refusal in the first place, namely, to ensure that other U.S. businesses or individuals can use their surnames in the marketplace.

App. Reply Br. 7 TTABVUE 2-3, 4-5.

The statute explicitly provides that "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal registration on account of its nature unless it … (e) Consists of a mark which, (4) is primarily merely a surname." 15 U.S.C. § 1052(e)(4). The statute does not exempt wholesale from this prohibition those surnames shared only by a few, or provide that the purpose of the prohibition is to protect others' rights to use their surnames except for those with uncommon surnames.[14] The only issue to be determined under the statute is whether a term "is primarily merely a surname." This determination is made by looking at "the primary significance of the mark as whole to the purchasing public." *Hutchinson Tech.*, 7 USPQ2d at 1492; *Darty*, 225 USPQ at 653 ("The common law also recognizes that surnames are shared by *more than one* individual, *each* of whom

---

[14] Similarly, the statute does not exempt from the prohibition against registration of merely descriptive terms those that are not in common or widespread use, simply because of relative infrequency of use. *See In re Bailey Meter Co.*, 102 F.2d 843, 41 USPQ 275, 276 (CCPA 1939) ("The fact that appellant may have been the first and only one to adopt and use the mark sought to be registered does not prove that the mark is not descriptive ...."); *In re Nat'l Shooting Sports Found., Inc.*, 219 USPQ 1018 (TTAB 1983) (same). *See also In re ActiveVideo Networks, Inc.*, 111 USPQ2d 1581, 1604 (TTAB 2014); *In re Greenliant Sys. Ltd.*, 97 USPQ2d 1078, 1083 (TTAB 2010).

14

may have an interest in using his surname in business….") (emphasis added). As noted above, we consider the circumstances singly and in combination.

While there has been some discussion in prior Board cases that one possible legislative purpose of § 2(e)(4) is to protect individuals to be able to use their own names in connection with their businesses, Assistant Commissioner Leeds acknowledged in *Rivera Watch* that "The legislative history of the statute, including the testimony of the witnesses before the Congressional Committees, is just about as confused as the decisional law." 106 USPQ at 147. "Since neither the legislative history of the statute nor the decisions interpreting it provide a standard for administration, it seems highly desirable to attempt a reconciliation of the somewhat diverse views and establish a test which can be consistently applied." *Id.* at 149. Commissioner Leeds further stated that:

> A trademark is a trademark only if it is used in trade. When it is used in trade it must have some impact upon the purchasing public, and it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, and it is only that, then it is primarily merely a surname. … If the mark has well known meanings as a word in the language and the purchasing public, upon seeing it on the goods, may not attribute surname significance to it, it is not primarily merely a surname. … There are some names which by their very nature have only a surname significance even though they are rare surnames. … And there are others which have no meaning – well known or otherwise – and are in fact surnames which do not, when applied to goods as trademarks, create the impression of being surnames.

*Id.*

15

She concluded that "It seems to me that the test to be applied in the administration of this provision in the Act is not the rarity of the name, nor whether it is the applicant's name, nor whether it appears in one or more telephone directories, nor whether it is coupled with a baptismal name or initials. The test should be: What is its primary significance to the purchasing public?" *Id. Accord Kahan & Weisz,* 184 USPQ at 422; *Harris-Intertype*, 186 USPQ at 239; *Hutchinson Tech.,* 7 USPQ2d at 1491.

Our focus, then, is on whether the purchasing public for an applicant's goods or services is more likely to perceive the applicant's proposed mark as only a surname than as something else. *See United Distillers*, 56 USPQ2d at 1221; *Miller v. Miller,* 105 USPQ2d at 1620; *In re Yeley*, 85 USPQ2d 1150, 1151 (TTAB 2007).

While ALDECOA may be rarely encountered as a surname, we cannot find, based on this record, that this removes ALDECOA from being "primarily merely a surname." The Examining Attorney presented a chart of various surname cases listing the findings under each *Benthin* factor and argued that "The mark at hand should be found to be primarily merely a surname regardless of a finding by this court on the rarity of ALDECOA because the mark does not have another recognized meaning and there is a strong connection with the owners of the application. In both *Darty* and *Rebo* [*In re Rebo High Definition Studio Inc.*, 15 USPQ2d 1314 (TTAB 1990)] the court determined the mark was a surname on very similar facts as to this case. i.e., the mark was rare but there was evidence of a

connection to the applicant and there was no other meaning." Ex. Att. Br. 6 TTABVUE 9.

We agree that the circumstances and record of this case establish that the primary significance of ALDECOA is as a surname. As in *Darty*, we accord particular weight to Applicant's association of the goods with the family name ALDECOA, both on the website showing the founder's and current owner's surname is ALDECOA and the packaging that refers to "A Family Coffee" directly under the surname ALDECOA. As to the other relevant circumstances presented by the Examining Attorney and Applicant, there is no persuasive evidence in the record that ALDECOA would be perceived as anything other than as a surname in the United States. Moreover, there is no evidence in the record to give the structure and pronunciation of ALDECOA any weight in the determination. And even though it is a relatively rare surname, with minimal additional public exposure in the media, this is outweighed by Applicant's use of ALDECOA as a surname in connection with its goods. On balance, we find that ALDECOA is primarily merely a surname.

**Decision**: The refusal to register under Section 2(e)(4) of the Trademark Act is affirmed and the application will issue on the Supplemental Register.