THIS OPINION IS
A PRECEDENT
OF THE TTAB

Mailed: January 7, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

Mitchell Miller, a Professional
Corp. dba Miller Law Group, P.C.
v.
Michele Ballard Miller
_____

Opposition No. 91184841
to application Serial No. 77343411
_____

Margarita Calpotura of Miller Law Group, P.C. for Mitchell
Miller, a Professional Corp. dba Miller Law Group, P.C.

Vijay K. Toke of Hiaring + Smith, LLP for Michele Ballard
Miller.
_____

Before Quinn, Cataldo and Lykos,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Michele Ballard Miller, d/b/a Miller Law Group

("applicant") filed an application to register the mark MILLER

LAW GROUP, with "LAW GROUP" disclaimed, on the Principal

Register in standard characters, for "legal services" in

International Class 45.[1] Applicant filed the application based on use in commerce pursuant to Trademark Act § 1(a), 15 U.S.C. § 1051(a), asserting first use anywhere and date of first use in commerce as of August 31, 1998.

Registration has been opposed by Mitchell Miller, a Professional Corp. dba Miller Law Group, P.C. ("opposer"). As grounds for opposition, opposer alleges use since 2006 of the designation MILLER LAW GROUP for legal services, and asserts the following claims in its second amended notice of opposition: that the proposed mark is (1) primarily merely a surname under Trademark Act § 2(e)(4); (2) merely descriptive under Trademark Act § 2(e)(1); (3) generic under Trademark Act § 2(e)(1); and (4) merely a trade name under Trademark Act § 45; that the application is (5) void because the application was filed by applicant and not the mark's owner, Miller Law Group, under Trademark Act § 1; and that applicant (6) committed fraud by deceiving the U.S. Patent and Trademark Office ("USPTO") as to the ownership of the mark.[2] In her answer, applicant has denied

---

[1] Application Serial No. 77343411 was filed on December 4, 2007 and published for opposition in the *Official Gazette* on May 6, 2008.

[2] Opposer's pleaded fraud claim was based on allegations that applicant deceived the USPTO by stating that applicant, and not Miller Law Group, is the owner of the mark, and further that applicant knew other third-parties also had rights in the applied-for mark. Because opposer has only tried the fraud claim as to the ownership allegation, the second allegation is deemed waived.

2

all of the salient allegations in the second amended notice of opposition.[3]

## The Record

By rule, the record includes the pleadings and the file history of the subject application. Trademark Rule 2.122(b), 37 CFR § 2.122(b). By stipulation as approved by the Board, opposer provided the testimony affidavits, with accompanying exhibits, of its principal, Mitchell Miller, and the following third-party attorneys with the surname MILLER: Stan Miller; Gary Miller; Larry W. Miller, Sr.; Randy Miller; and Russell Miller.[4] Opposer also filed two notices of reliance ("NOR"), which included excerpts and accompanying exhibits from the discovery deposition of Michele Ballard Miller.[5] Applicant provided the testimony affidavit of herself and Susan Kostal, applicant's legal marketing consultant, with accompanying exhibits. Additionally, applicant filed a notice of reliance, which included excerpts and accompanying exhibits from the discovery deposition of opposer's principal, Mitchell Miller.

---

[3] Applicant has asserted likelihood of confusion and unclean hands as affirmative defenses. The likelihood of confusion claim was stricken on November 29, 2010. (Board's Order, p. 2) Applicant's affirmative defense of unclean hands is deemed waived because applicant failed to argue and present evidence regarding the defense at trial.

[4] Both parties have designated portions of their testimony and evidence as "confidential." In this decision, we have endeavored to discuss those portions of the parties' testimony and evidence that truly contain confidential information only in general terms.

[5] Opposer additionally provided the testimony affidavit of Corey McCarthy, as evidence of actual confusion. Mr. McCarthy's affidavit will not be considered because applicant's affirmative defense of likelihood of confusion has been stricken.

The parties also have submitted four sets of stipulated facts.[6]

Opposer and applicant filed main briefs on the case, and opposer

filed a reply brief.

## Admissibility of Evidence

Applicant challenges the probative value of opposer's

evidence and argues that the evidence is not admissible.

Specifically, applicant argues that the testimony declarations

of opposer's principal, Mitchell Miller, and of third parties

Stan Miller, Gary Miller, Larry W. Miller, Sr., Randy Miller,

and Russell Miller are not competent evidence because the

declarations fail to establish that any of the users has rights

senior to applicant's rights in the proposed MILLER LAW GROUP

mark. Applicant further asserts that the testimony declarations

are not probative because, according to applicant, they do not

illustrate the extent to which each law firm uses the proposed

mark. Applicant additionally objects to the testimony

declarations to the extent that they declare MILLER LAW GROUP is

not a trademark or service mark.

Initially, the Board agrees with applicant that the

opinions of opposer and third parties concerning the strength of

---

[6] The Board notes with approval the parties' stipulation to testimony by affidavit and stipulation to undisputed facts. While this case was not tried in accordance with the Board's Accelerated Case Resolution procedure (ACR), the parties nonetheless availed themselves of these ACR-type efficiencies. Additional information regarding ACR is available in TBMP §§ 528.05(a)(2), 702.04 and 705 (3d ed. 2012), and on the Trademark Trial and Appeal Board web page of the United States Patent and Trademark Office (USPTO) website at www.uspto.gov.

4

the proposed mark and likelihood of confusion have no probative value since the strength of a mark is a factor in the likelihood of confusion analysis, but such a claim is not before us.

The Board is not, however, persuaded by applicant's other objections. The question of who has senior rights to the proposed mark has no bearing on the claims raised in this opposition, and opposer does not rely on the testimony declarations for the proposition that it or any of the third parties has rights senior to applicant.[7] Instead, the testimony declarations are probative to the extent that they demonstrate MILLER is used by others to identify their surnames in connection with their legal services, and that language such as "LAW GROUP" is used by these individuals to describe the structure of their law firms. The testimony declarations adequately set forth the particular individual identified by MILLER in the respective law firm names, the full name of the law firm, the extent of time for which each has been using his firm name, the geographic scope of the legal practice, and even the primary areas of legal practice. Considering these elements as a whole, the testimony declarations are clearly relevant and

---

[7] The issue of priority of use is not relevant to the remaining claims in this case, although testimony as to any use of MILLER or MILLER LAW GROUP by opposer is not immaterial because of its relevance to opposer's standing. It is immaterial to the claims in this case, however, whether use by third parties is prior to or subsequent to applicant's claimed first use.

admissible, and will be considered to the extent of their probative value.

With respect to applicant's objections to opposer's use of Google® search results, applicant argues that search engine results are incompetent and inadmissible hearsay under Rules 801 and 802 of the Federal Rules of Evidence. Applicant further objects on the grounds of lack of personal knowledge and proper foundation under Fed. R. Evid. 602 and 901, respectively.

Generally, a search result summary from an Internet search engine has limited probative value because such a list does not show the context in which the term or phrase is used on the listed web pages and may not include sufficient surrounding text to show the context within which the term or phrase is used. *See In re Bayer AG*, 488 F.3d 960, 967, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007); *In re Thomas Nelson, Inc.*, 97 USPQ2d 1712, 1715 (TTAB 2011); *In re Thomas*, 79 USPQ2d 1021, 1026 (TTAB 2006).

As applicant states, opposer only asserts that "the third parties appear to use MILLER LAW GROUP to describe their law practice[s]." (App. Brief, p. 3, *quoting* Opp. Brief, p. 19) In its brief, opposer goes on to list specific results that have sufficient information from surrounding text to discern the context in which MILLER LAW GROUP is being used, "including Miller Law Group in Walnut, California; J. Bruce Miller Law

6

Group in Louisville, Kentucky; Miller Law Group in Hinsdale, Illinois; Miller Family Law Group; Seifert Miller Law Group in Orlando, Florida; Miller Law Group in Jonesboro, Georgia; Miller Health Law Group in Los Angeles; Miller Law Group, LC in Chesterfield Missouri; and Miller Law Group, LLC in Longwood, Florida." (Opp. Brief, p. 19, *citing* Mitchell Miller Aff., Para. 29 & Exb. E) Many of the results of opposer's search include sufficient surrounding text to show that MILLER is the surname of a particular individual, that MILLER LAW GROUP is used in connection with legal services by that individual, and geographic information concerning the legal practice. (Mitchell Miller Aff., Exb. E, *see, e.g.*, J. Bruce Miller in Louisville, KY; Russell W. Miller, Jr. in Sacramento, CA; Michele Ballard Miller (applicant); Scott M. Miller in Longwood (unspecified state); Stan Miller in Little Rock, AR; Larry Miller, Jr. in West Lawn (unspecified state); Andy P. Miller in Plymouth County, MA; and Maureen Miller in Chesterfield, MO). Moreover, opposer has corroborated the Google® search results with testimony declarations. Specifically, the testimony declarations, and supporting exhibits, of opposer's principal, Stan Miller, Larry Miller, and Russell Miller reflect specific results from the Google® search strategy. Opposer's testimony declaration sufficiently sets forth the personal knowledge of

its principal concerning the search strategy and foundation for the Google® search results. (Mitchell Miller Aff., Para. 29)

Thus, the results which include sufficient surrounding text to determine that MILLER is the surname of a particular individual, and that MILLER LAW GROUP is used in connection with that individual's legal practice, are certainly probative to the issues in this case. The fact that opposer has supplemented some of the search results with testimony declarations and supporting evidence contributes to the probative value of those supplemented search results. Therefore, the Google® search results do offer some probative value and will be considered to that extent.

## Standing

To establish standing, opposer must show that it is not an intermeddler, but has a real interest in the proceeding. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); 15 U.S.C. §1064.

Opposer asserts that "Since on or about December 2006, Opposer has used and continues to use its name Miller Law Group, P.C. ('Opposer's Name'), which is similar to Applicant's Alleged Mark." In addition, opposer has evidenced its continuous use of "Miller Law Group" in connection with legal services beginning in January, 2007 through the testimony affidavit of its principal, articles of incorporation, use of the mark on its

website as of September, 2007, letterhead and envelope, email signature, signage, advertising and marketing material, tradeshow and presentation material, and in publications. (*Mitchell Miller Aff.,* Paras. 5, 8-9, 11, 14-18, Exbs. A –D; *Stipulated Facts*, Exbs. E-P, R-S)

In this case, opposer has established that it has a commercial interest in using MILLER LAW GROUP and derivations thereof to identify services that are essentially identical to those recited in the involved application. Further, opposer's commercial interest demonstrates competitive need to use the wording MILLER LAW GROUP for services that are the same as those recited in applicant's involved application. We find that because opposer has demonstrated its usage and competitive need of the wording comprising the MILLER LAW GROUP mark, opposer has established its standing to oppose applicant's mark. *See, e.g.*, *Otto Roth & Co. v. Universal Foods Corp*., 640 F.2d 1317, 209 USPQ 40, 44 (CCPA 1981) ("It is clear that use of a term in a descriptive sense is sufficient to impart standing to oppose federal registration of a descriptive "word, name, symbol, or device" as a trademark ...."); *Golomb v. Wadsworth*, 592 F2d 1184,201 USPQ 200, 201 (CCPA 1979) (damage sufficient to establish standing to oppose a registration "presumed or inferred when the mark sought to be registered is descriptive of the goods and the opposer or petitioner is one who has a

sufficient interest in using the descriptive term in its business"); *Saint-Gobain Abrasives, Inc. v. Unova Industrial Automation Systems, Inc.,* 66 USPQ2d 1355, 1357 (TTAB 2003) ("plaintiff has alleged the interest necessary to bring these proceedings by asserting its competitive uses of stripes and bands in various colors including the colors yellow and blue on abrasive wheels and disks").

Additionally, applicant sent cease and desist letters to opposer asserting applicant's rights in the applied-for mark and "objecting to Opposer's use of Opposer's Name." (Second Amended Notice of Opposition, Para. 38.) These cease and desist letters provide additional evidence that opposer has business interests that have been affected, i.e., a real interest in the proceeding, and thus, has standing. *See Ipco Corp. v. Blessings Corp.*, 5 USPQ2d 1974 (TTAB 1988) (cease and desist letter coupled with plaintiff's use of mark sufficient to establish standing). We further note that applicant does not dispute opposer's standing to bring the above-referenced opposition proceeding.

### Surname Claim

"The test for determining whether a mark is primarily merely a surname is the primary significance of the mark as a whole to the purchasing public." *In re Hutchinson Tech. Inc.,* 852 F.2d 552, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988) (footnote

omitted). "The question of whether a word sought to be registered is primarily merely a surname within the meaning of the statute can be resolved only on a case by case basis." *In re Établissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985). We typically look to four factors in determining whether a mark's primary significance to the public is as a surname:

(1) whether the surname is rare;

(2) whether anyone connected with applicant has the involved term as a surname;

(3) whether the term has any other recognized meaning; and

(4) whether the term has the "look and feel" of a surname.

See *In re Binion*, 93 USPQ2d 1531, 1537 (TTAB 2009); *In re United Distillers plc*, 56 USPQ2d 1220 (TTAB 2000), citing *In re Benthin Management Gmbh*, 37 USPQ2d 1332 (TTAB 1995).[8] The Board considers each of these factors independently with respect to the term "Miller." If we determine the public would perceive the term primarily as a surname, we will then determine if the disclaimed terms "Law Group" cause us to alter that determination.

### A. Will the Public Primarily Perceive Miller as a Surname?

1. Miller is a common surname.

---

[8] A fifth factor, not relevant to this case inasmuch as the terms comprising the mark are presented in standard characters, is whether the term appears in a stylized form that is sufficiently distinctive to cause the mark not to be perceived as primarily merely a surname. *Benthin*, 37 USPQ2d at 1334.

The record is replete with evidence that the surname MILLER is anything but rare.  The most relevant evidence on the question of how rare (or common) MILLER is as a surname is U.S. Census Bureau Genealogy Data, showing MILLER as the sixth most frequently occurring surname from Census 2000, with a very substantial 1,127,803 occurrences ("Census 2000").  (Mitchell Miller Aff., Exb. J; Opp. NOR, Exb. 2, Adms. Nos. 1-2)  Opposer has supplemented the independently persuasive Census 2000 with the following evidence:

(i)      California Bar Association search results indicating 274 "Active" attorneys with the surname MILLER in California on April 22, 2011 (only showing the first 500 total results) (*Id*. at Exb. I);[9]

(ii)     California Bar Association search results indicating 68 "Active" attorneys with the surname MILLER in San Francisco, CA on November 21, 2010 (*Id*. at Exb. H);[10]

(iii)    Business and Residence sections of San Francisco, CA White Pages® search results for Miller, indicating approximately 70 individuals and businesses identified by the surname MILLER, dated December 2009 (*Id*. at Exb. G);

(iv)     YellowPages.com search result for Miller in San Francisco indicating 357 businesses with "Miller" in the name, dated November 21, 2010 (*Id*. at Exb. F);

---

[9] The status of many of the attorneys is listed as "Deceased," "Inactive" or "Not Eligible."  Therefore, even though the evidence indicates 1,263 total results, only the 274 "Active" results from the first 500 total results provided will be considered as relevant and probative.
[10] Similarly, the status of many of the attorneys is listed as "Deceased," "Inactive" or "Not Eligible."  Therefore, even though the evidence indicates 101 total results, only the 68 "Active" results will be considered as relevant and probative.

(v)     LexisNexis® Internet database search results for "Miller" in California news publications from the week preceding April 20, 2011, producing 351 results (*Id*. at Exb. L);[11]

(vi)    Google® search for "Miller Law Group" on March 21, 2011, showing first ten pages (*Id*. at Exb. E);[12]

(vii)   Affidavit of Stan Miller and attached website printouts for the firm Miller Law Group, PLLC, showing that Stan Miller uses his surname in connection with legal services (Stan Miller Aff., Exb. A);

(viii)  Affidavit of Gary Miller and attached website printouts for the firm Miller Law Group, PLLC, showing that Garry Miller uses his surname in connection with legal services (Gary Miller Aff., Exb. A);

(ix)    Affidavit of Larry W. Miller and attached website printouts for the firm The Miller Law Group, PLLC, showing that Larry W. Miller, Sr. uses his surname in connection with legal services (Larry W. Miller, Sr. Aff., Exb. A);

(x)     Affidavit of Randy Miller and attached letterhead, envelopes and business cards for the firm The Miller Law Group, PLLC, showing that Randy Miller uses his surname in connection with legal services (Randy Miller Aff., Exb. A);

(xi)    Affidavit of Russell Miller and attached business card, letterhead and email signature for the firm

---

[11] While many of the search results do indeed show "Miller" used as a surname, some of the results show "Miller" used in other contexts, such as a street name. Therefore, the evidence is considered only generally to show that "Miller" is used as a surname, rather than as a specific reference to the number of results. Opposer also submitted LexisNexis® Internet database search results for "Miller" in California news publications, producing more than 3,000 results, dated April 20, 2011, as Exhibit K to his affidavit. However, none of the publications associated with search result were submitted, making it impossible for the Board to consider the context in which "Miller" is used. Therefore, opposer's Exhibit K will not be considered.

[12] Again, the evidence will only be considered to show generally that there are users of "Miller Law Group" in connection with legal services.

> Miller Law Group, showing that Russell Miller uses his surname in connection with legal services (Russell Miller Aff., Exb. A).

The referenced evidence not only demonstrates that MILLER is a common surname, but that it is a common surname for attorneys in the legal profession, the very profession in which applicant uses the mark she seeks to register.[13]  Even applicant admits that "there is little doubt that Miller is a common surname."  (App. Brief, p. 16)  The first factor of the surname analysis, therefore, unquestionably suggests that the public would perceive "Miller" in the mark as a surname.

2. <u>Applicant's surname is Miller.</u>

To state the obvious, the surname of applicant, Michele Ballard Miller, is MILLER.  (App. Brief, p. 15; Opp. NOR, Exb. 2, Adm. No. 5)  That Applicant's name is MILLER strengthens the inference that the public will perceive the term as a surname.

3. <u>Miller has no other recognized meaning in context.</u>

The third factor for a surname analysis calls for consideration of other recognized meanings of the surname. Although opposer acknowledges that a "miller" is one that operates a mill (Opp. Brief, p. 9), neither opposer nor applicant provides supporting evidence of this fact.  We take

---

[13] We observe that much of the above-noted evidence focuses on the surname significance of MILLER in California.  We note, however, that inasmuch as applicant seeks registration of the mark at issue without geographic restriction, our analysis is based upon evidence of the surname significance of MILLER in the United States as a whole, regardless of either party's area of use of its respective mark(s).

judicial notice of the *Merriam-Webster Dictionary* definition of "miller" as "one that operates a mill" and "any of various moths having powdery wings."[14]

The mere existence of other non-surname meanings of the mark does not preclude a finding that the mark is primarily merely a surname. Rather, we consider both whether, and, if so, the degree to which, the public would associate any established meaning with the goods or services in the application. *See Établissements Darty*, 225 USPQ at 653-54 (where there was no relationship between the established meaning of the apparent root word of the surname mark and the claimed services, the mark was likely to be perceived primarily as a surname). The question is not whether a mark having surname significance might also have a non-surname significance, but whether, in the context of the goods or services at issue, that non-surname significance is the mark's primary significance to the purchasing public, thus eclipsing and relegating the mark's surname significance to secondary rather than primary status. *See In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975); *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 184 USPQ 421, 422 (CCPA 1975).

---

[14] The Board may take judicial notice of dictionary evidence. *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). *See also* TBMP § 704.12 (3d ed. rev. 2012).

4. <u>MILLER has the look and feel of a surname.</u>

Finally, we must consider whether the term has the "look and feel" of a surname. This is a subjective factor concerning whether MILLER has the "structure and pronunciation" or "the look and sound" of a surname. *In re Benthin Management GmbH,* 37 USPQ2d at 1333; *In re Sava Research Corp.,* 32 USPQ2d at 1381; *In re Industrie Pirelli,* 9 USPQ2d 1564, 1566 (TTAB 1988). As stated in *Industrie Pirelli,* "certain rare surnames look like surnames, and certain rare surnames do not . . . ." *Id.*

Being the sixth most common surname as of Census 2000, there are numerous individuals with the surname MILLER throughout the United States, and the common nature of the surname conditions consumers to see the term as a surname. Additionally, MILLER "would not be perceived as an initialism or acronym . . . and does not have the appearance of having been coined by combining a root element that has a readily understood meaning in its own right with either a prefix or a suffix." *In re Gregory*, 70 USPQ2d 1792, 1796 (TTAB 2004).

We find based upon the record evidence and the term itself that MILLER has the "look and feel" of a surname.

5. <u>The Public Will Primarily Perceive Miller as a Surname.</u>

Viewing these factors together, we believe the primary significance of MILLER, to the purchasing public for legal services, is that of a surname, rather than one who operates a

mill (or a moth).  There is overwhelming evidence of the surname significance in the record, and the record, in contrast, lacks evidence of the non-surname significance of MILLER in the context of the claimed services.

Both parties in this proceeding share the surname MILLER. Applicant has testified that she selected MILLER in her firm name because it is her surname. (Opp. NOR, Exb. 5 at p. 13) Applicant prominently incorporates both her full name, Michele Ballard Miller, with the proposed MILLER LAW GROUP mark on her business card and attorney profile as part of her marketing efforts for her firm.  (Stip. Facts, Para. 13, Exb. B at MBM000025, 27, 38 & 162)  Applicant is identified by her surname in conjunction with the name of her firm in marketing materials, publications, and speaking, presentation and conference materials.  (Stip. Facts, Para. 13, Exb. B at MBM000025, 27, 38, 160-61, 162; Third Stip. Facts, Exb. 2 at MBM000096, 99, 101-102, 120, 130, Exb. 3 at MBM000067, 71, 73, Exb. 6 at MBM000253, Exb. 7 at MBM000667, Exb. 9 at MBM001391, Exb. 15 at MBM000001-03, Exb. 21 at MBM000208, Exb. 25 at MBM001498, Exb. 26 at MBM000833, Exb. 27 at MBM000175, Exb. 28 at MBM001162, Exb. 29 at MBM001367, 1370, Exb. 30 at MBM000596, Exb. 31 at MBM000152, Exb. 32 at MBM000687, 692, 152, Exb. 34 at MBM001443, Exb. 35 at MBM000262-63, Exb. 36 at MBM000604, Exb. 37 at MBM000622, 632, Exb. 39 at pp. 9-10, 45-46)  Applicant's extensive use of her

17

surname in conjunction with her firm name directly associates the two. Applicant also heavily markets her firm as a woman and minority owned law firm, which further contributes to the surname significance of MILLER as used to designate the woman who owns the firm. (Stip. Facts, Exb. B at MBM000027-28, 31; Third Stip. Facts, Exb. 5, Exb. 9 at MBM001400, Exb. 10, Exb. 11 at MBM000009, 06, Exb. 39 at p. 6)

Even applicant does not argue that MILLER is not primarily merely a surname simply because it has other defined meanings. Applicant admits throughout the record that MILLER is a surname – her surname – and that it is used for the purpose of identifying her. On the other hand, and as discussed above, the record is devoid of evidence that the non-surname meanings of MILLER, *i.e.*, a mill operator or a moth, are the primary significance thereof or somehow eclipse its surname significance.

Based upon the evidence of record, we find that the primary significance of MILLER to the purchasing public is that of a surname.

### B. The wording "LAW GROUP" does not diminish the mark's surname significance.

On balance, the relevant factors weigh heavily in favor of finding that MILLER is primarily merely a surname. The question then becomes, does the combination of the wording "LAW GROUP"

18

with the surname "MILLER" diminish the surname significance of Miller such that its primary significance is other than as a surname? *See Hutchinson Tech.*, 7 USPQ2d at 1492 (when assessing whether the public will view a mark primarily as a surname, the "mark sought to be registered must be considered in its entirety"); *In re Standard Elektrik Lorenz Aktiengesellschaft*, 371 F.2d 870, 152 USPQ 563, 566 (CCPA 1967) ("A mark must be considered in its entirety.").

It is well settled that combining a surname with the generic name for the services does not overcome a mark's surname significance. *See In re Hamilton Pharms. Ltd.*, 27 USPQ2d 1939 (TTAB 1993) (holding HAMILTON PHARMACEUTICALS primarily merely a surname for pharmaceutical products); *In re Cazes*, 21 USPQ2d 1796 (TTAB 1991) (holding BRASSERIE LIPP primarily merely a surname when used in connection with restaurant services); *In re Woolley's Petite Suites*, 18 USPQ2d 1810 (TTAB 1991) (holding WOOLLEY'S PETITE SUITES primarily merely a surname for hotel and motel services). The addition of an entity designation, such as "Inc." or "Co.," also does not diminish the surname significance of a term that is otherwise primarily merely a surname. *See In re I. Lewis Cigar Mfg. Co.*, 205 F.2d 204, 98 USPQ 265, 267 (CCPA 1953) (holding S. SEIDENBERG & CO'S. primarily merely a surname); *In re P.J. Fitzpatrick, Inc.*, 95 USPQ2d 1412 (TTAB

2010) (holding P.J. FITZPATRICK, INC. is not primarily merely a surname because P.J. Fitzpatrick is an entire personal name).

In this case, the exclusive right to use the wording "LAW GROUP" apart from the mark as shown was disclaimed in the application. Applicant has even conceded on the record that the phrase "LAW GROUP" can be generic. (Answer, Para. 18)

We find that "LAW GROUP" is a generic designation for a law firm.[15] There is extensive evidence on record that the term "LAW GROUP" is a common designation for an entity comprised of a group of lawyers that offer legal services. (Michele Ballard Miller Dec., Paras. 1 & 3; Mitchell Miller Aff., Paras. 1, 5, 7; Stan Miller Aff., Paras. 1, 5, 7; Gary Miller Aff., Paras. 1, 5, 7; Larry Miller Aff., Paras. 1, 5; Randy Miller Aff., Paras., 1, 5, 7; Russell Miller Aff., Paras. 1, 7)[16] Applicant even states that she does not object to other people using "LAW GROUP" and that most people would understand the language as being a designation for a law firm. (Opp. NOR, Exb. 5 at pp. 36-37) The evidence referenced even demonstrates that it is common practice in the legal profession to combine one's surname (in this case, the surname "MILLER") with a designation that

---

[15] The Board takes judicial notice of the *Merriam-Webster's Ninth New Collegiate Dictionary* definitions for the terms "law" and "group." *Notre Dame du Lac,* 213 USPQ 594.

[16] In addition to the referenced evidence, applicant has entered into consent to use and register agreements with three parties that use the surname MILLER in connection with a generic designation such as "LAW GROUP," "LAW OFFICES," and "LAW INC." These consent agreements relate to the use of the term MILLER, and are probative to the extent that they demonstrate the generic use of "LAW GROUP."

identifies the practice as a legal service provider, such as "LAW GROUP."

Considered as a whole and in light of the preponderance of the evidence, we find that applicant's proposed MILLER LAW GROUP mark is primarily merely a surname under Section 2(e)(4).

## Acquired Distinctiveness

Section 2(e)(4) of Trademark Act precludes registration of a mark which is "primarily merely a surname" on the Principal Register without a showing of acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f).[17] The spirit and intent behind the statutory policy that a surname is not inherently distinctive and requires a showing that consumers have come to recognize the surname as an indicator of source is rooted in common law principles. *See, e.g.*, *Etablissements Darty*, 225 USPQ at 653 ("The statute . . . reflects the common law that exclusive rights in a surname *per se* cannot be established without evidence of long and exclusive use which changes its significance to the public from a surname of an individual to a mark for particular goods or services.) (citation omitted); *Kimberly-Clark Corp. v. Marball*, 94 F. Supp. 254, 88 USPQ 277, 279 (D.D.C. 1950) ("'the entire Act

---

[17] While acquired distinctiveness was not raised in the pleadings, applicant did raise the claim at trial and opposer also argued the claim in its reply brief. Therefore, because the question of acquired distinctiveness has been tried by implied consent of the parties, and the record includes sufficient evidence to determine the question, the Board will rule on it.

indicate[s] that Congress intended to codify the law of unfair competition in regard to the use of personal names as it has been developed by the courts. ... At common law it was held that every man had an absolute right to use his own name.'") Evidence of "long and exclusive use which changes its significance to the public from a surname of an individual to a mark for particular goods or services" is necessary because surnames are shared by multiple individuals, and each individual may have an interest in using his/her surname in connection with his/her business. Section 2(f) underscored the common law by requiring an applicant's use to be "substantially" exclusive.

The record clearly establishes that both applicant and opposer have an interest in using, and do in fact use, the MILLER surname in connection with their respective legal practices. Applicant's evidence of use, which applicant also relies upon in order to demonstrate that the applied for mark has acquired distinctiveness, includes the following:

(i) Applicant's continuous use of MILLER LAW GROUP since August of 1998 through her licensee, Miller Law Group, P.C. (Michele Ballard Miller Dec., Paras. 3, 6, Exb. A);

(ii) Significant growth in the gross revenues of Miller Law Group, P.C. from 1999 through 2009 (*Id.*, Para. 8, Exb. B);

(iii) Expenditures of tens of thousands of dollars in marketing efforts since the founding of Miller Law Group, P.C. (*Id.*, Paras. 9-11; Kostal Aff., Paras. 5, 8-9);

22

(iv) Articles and publications on topics related to labor and employment law authored by applicant and other attorneys of Miller Law Group, P.C. (Michele Ballard Miller Dec., Para. 13; Third Stip. Facts, Paras. 2, 7, 10, Exb. 2 at MBM000098, 100, 104-131); Third Stip. Facts, Paras. 5-11, Exbs. 2, 6-7);

(v) Articles written about, featuring, or referencing Miller Law Group, P.C. and its attorneys (Michele Ballard Miller Dec., Para. 13; Third Stip. Facts, Paras. 5-6, 8-9, 11, Exb. 5 at MBM000050, Exb. 2 at MBM 000102, Exb. 6 at MBM000253, Exb. 2 at MBM00096, Exb. 7 at MBM000667);

(vi) Speaking events and panel discussions, and related materials, by applicant and other attorneys of Miller Law Group, P.C. under the MILLER LAW GROUP mark (Michele Ballard Miller Dec., Para. 13; Third Stip. Facts, Paras. 23-44, Exbs. 18-19, Exb. 20 at MBM000187, 841, Exb. 21 at MBM000208, 1434, Exb. 22 at MBM000243, 816, 819, Exb. 23, Exb. 24 at MBM000678, Exb. 25 at MBM000132, 1498, Exb. 26 at MBM000830-36, Exb. 27, Exb. 28 at MBM001162, Exb. 29 at MBM001370, Exb. 30 at MBM000594, 597, Exb. 31 at MBM000797, 799, 152, Exb. 32 at MBM000683, 685, 687, 692, 151, Exb. 33 at MBM000171, Exb. 34 at MBM000184, 1441, 1443, Exb. 35 at MBM000262-63, 265, Exb. 36 at MBM000598, 601, 604, 1331, 1333, Exb. 37 at MBM000619, 621-22, 632, Exb. 9 at MBM001387);

(vii) Updates, alerts, and newsletters since 2000 to clients and prospective clients on labor and employment law developments (Michele Ballard Miller Dec., Para. 14; Third Stip. Facts, Para. 20, Exb. 15);

(viii) Email blasts from Miller Law Group, P.C. to thousands of clients, colleagues and prospective clients located throughout the United States, featuring the latest legal information, case law, and general strategies within its area of expertise (Michele Ballard Miller Dec., Para. 14);

(ix) Advertisements in various publications for legal services under the MILLER LAW GROUP mark (*Id.*, Para. 14; Third Stip. Facts, Para. 13-19, Exb. 2 at

MBM000099, Exb. 9 at MBM001400, Exb. 10 at MBM000005, Exb. 11 at MBM000009, Exb. 12 at MBM000007, Exb. 13 at MBM000008);

(x)     A monthly webinar series on current developments in labor and employment law since 2005, invitations for which are currently sent to over 7,500 individuals and entities throughout the country and regularly attended by over 500 persons (Michele Ballard Miller Dec., Para. 15);

(xi) A clientele that includes large institutional and Fortune 500 companies (*Id.*, Para. 16);

(xii)    Business of the firm from reputation in the legal industry rather than from individual referrals (*Id.*, Para. 16);

(xiii)   Accolades and recognition of the Miller Law Group, P.C. attorneys (*Id.*, Para. 17);

(xiv)    The involvement of Miller Law Group, P.C. in organizations dedicated to increasing the reach and recognition of women and minority owned companies (*Id.*, Para. 18);

(xv) Recognition in 2010 of Miller Law Group, P.C. as one of the 100 fastest growing companies in the San Francisco Bay Area (*Id.*, Para. 20; Third Stip. Facts, Paras. 12, Exb. 8);

(xvi)    Promotion of Miller Law Group's legal services on its website (Third Stip. Facts., Exb. 39).

Opposer provides the following as evidence of its use of

MILLER and MILLER LAW GROUP in connection with its legal

services:

(i)     Opposer is a professional corporation doing business as Miller Law Group, P.C. in connection with legal services continuously since January, 2007 (Mitchell Miller Aff., Paras. 1, 8-9; Stip. Facts, Para. 1);

(ii) Use of Miller Law Group on opposer's website in connection with its legal services since September

24

of 2007 (Mitchell Miller Aff., Paras. 17-18, Exb. B; Stip. Facts, Para. 24, Exb. C; Third Stip. Facts, Para. 47, Exb. 40, respectively);

(iii)    Use of Miller Law Group on opposer's signage, business cards, letterhead, envelope, and email signature in connection with its legal services (Mitchell Miller Aff., Paras. 15, 19-20, Exbs. C, D; Stip. Facts, Para. 25, Exb. D);

(iv)   Use of Miller Law Group on a representative sample of opposer's marketing material that opposer distributes at conferences, speaking engagements, and trade shows in connection with its legal services (Mitchell Miller Aff., Paras. 21-23; Stip. Facts, Para. 26, Exb. E at MPM000126-27, 131, 134-43, 145-46);

(v)   Use of Miller Law Group on articles and publications written by opposer's principal between 2007 and 2010 in the area of its legal services (Mitchell Miller Aff., Para. 24; Stip. Facts, Paras. 27-38, Exbs. F-Q);

(vi)   Use of Miller Law Group on alerts and newsletters written by opposer's principal and distributed to opposer's clients and professional contacts between September of 2007 and November of 2010 (Mitchell Miller Aff., Para. 25; Stip. Facts, Para. 39, Exb. R);

(vii)    Use of Miller Law Group on conference programs listing opposer's principal as a conference speaker and/or moderator between November of 2007 and September of 2010 (Mitchell Miller Aff., Para. 22; Stip. Facts, Para. 40, Exb. S at MPM000079, 81, 83-4, 87, 89-90, 93, 95, 100, 107, 110, 117);

(viii)   Applicant's cease and desist letter to opposer (Stip. Facts, Para. 41, Exb. T).

Opposer has also provided evidence of third-party use of

MILLER in connection with legal services in the form of

testimony affidavits, discussed under the surname analysis.

Based on the record, there are at least nine users, including applicant and opposer, of the surname MILLER in connection with legal services. Given that MILLER is the sixth most common surname in the country as of Census 2000, and given that evidence from the State Bar of California shows 274 "Active" attorneys with the surname MILLER as of April 22, 2011, and 68 "Active" attorneys with the surname MILLER in San Francisco alone as of November 21, 2010, (Mitchell Miller Aff., Exbs. I & H, respectively) it is reasonable to presume that there are additional legal practitioners that use MILLER in connection with legal services, and that the record only reflects a small sampling of those users.

Although applicant appears to have used the mark continuously through her licensee since August 24, 1998, it is clear from the record that applicant has not established that her use of MILLER is substantially exclusive as required by Section 2(f). Applicant has even acknowledged the use of MILLER by three additional third parties with the surname MILLER throughout the country, and has gone as far as to consent and agree to their use and registration of the surname MILLER in connection with their legal services. As stated by our primary reviewing court:

> In respect of registration, there must be a trademark, *i.e.*, purchasers in the marketplace must be able to recognize that a term or

> device has or has acquired such
> distinctiveness that it may be relied on as
> indicating one source of quality control and
> thus one quality standard.  When the record
> shows that purchasers are confronted with more
> than one (let alone numerous) independent
> users of a term or device, an application for
> registration under Section 2(f) cannot be
> successful, for distinctiveness on which
> purchasers may rely is lacking under such
> circumstances.

*Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984).  Moreover, applicant has not, and it would appear cannot in good faith, submit a verified statement with an affidavit or signed declaration under 37 C.F.R. § 2.20 that the mark has become distinctive of her legal services through her "substantially" exclusive use in commerce.[18]

We conclude that applicant has not acquired distinctiveness of the surname MILLER or of the proposed MILLER LAW GROUP mark in connection with legal services.

In light of our finding on the surname claim and the question of acquired distinctiveness, we find it unnecessary to reach opposer's remaining claims.

**Decision**: Opposition No. 91184841 is sustained on the ground that the mark is primarily merely a surname and applicant's mark has not acquired distinctiveness.

---

[18] Applicant has testified that she would not be concerned if third parties in other geographic areas used MILLER LAW GROUP in connection with other areas of legal practice.  (Opp. NOR at Exb. 5, p. 44)