THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
June 13, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Weiss Watch Company, Inc.*

_____

Serial No. 86782562

_____

Joshua A. Schaul of Sherman IP LLP
    for Weiss Watch Company, Inc.

Roger T. McDorman, Trademark Examining Attorney, Law Office 109,
    Michael Kazazian, Managing Attorney.

_____

Before Kuhlke, Wolfson and Coggins, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Applicant, Weiss Watch Company, Inc., filed an application to register on the Principal Register the standard character mark WEISS WATCH COMPANY ("WATCH COMPANY" disclaimed) for goods identified as "Cases for clock and watch-making; Cases for watches and clocks; Chronographs as watches; Chronographs for use as watches; Clock and watch hands; Clocks and watches; Complication watches; Diving watches; Dress watches; Inexpensive non-jewelry watches; Jewellery and watches; Jewellery, clocks and watches; Jewelry watches; Mechanical and automatic watches; Watch and clock springs; Watch bands; Watch bands and straps; Watch boxes; Watch bracelets; Watch cases; Watch chains; Watch

clasps; Watch crowns; Watch faces; Watch glasses; Watch movements; Watch parts; Watch straps; Watch straps made of metal or leather or plastic; Watch winders; Watch winding buttons; Watches; Watches and clocks; Watches and jewellery; Watches and jewelry; Watches and straps for watches; Watches for outdoor use; Watches for sporting use; Watches, clocks; Watches, clocks, jewellery and imitation jewellery; Watches, clocks, jewelry and imitation jewelry; Women's watches; Wrist watches," in International Class 14.[1]

Registration has been refused under Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4), on the ground that WEISS WATCH COMPANY is primarily merely a surname. After the Examining Attorney made the refusal final, Applicant appealed to this Board. We affirm the refusal to register.

Section 2(e)(4) of the Trademark Act precludes registration of a mark on the Principal Register that is "primarily merely a surname," without a showing of acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f).[2] A term is primarily merely a surname if, when viewed in relation to the goods or services for which registration is sought, its primary significance to the purchasing public is that of a surname. *See In re United Distillers plc*, 56 USPQ2d 1220, 1221 (TTAB 2000). *See also In re Hutchinson Tech. Inc.*, 852 F.2d 552, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988). This expression of the test restates the rule set forth in *In re*

[1] Application Serial No. 86782562 was filed on October 8, 2015, under Section (1)(a) of the Trademark Act, 15 U.S.C. § 1051(a) based upon Applicant's allegation of first use and first use in commerce on May 1, 2013.

[2] Applicant has not claimed or argued that the WEISS portion of its mark, or that its mark as a whole, has acquired distinctiveness or is capable of registration on the Supplemental Register. Accordingly, those questions presently are not before us.

*Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 184 USPQ 421, 422 (CCPA 1975) ("[A] correct resolution of the issue can be made only after the primary significance of the mark to the purchasing public is determined . . . ."). *See also In re Etablissements Darty et Fils*, 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985). In *Darty*, the Federal Circuit considered several factors in determining whether the purchasing public would perceive a proposed mark as primarily merely a surname, including: 1) whether the applicant adopted a principal's name and used it in a way that revealed its surname significance; 2) whether the term had a nonsurname "ordinary language" meaning; and 3) the extent to which the term was used by others as a surname. 225 USPQ at 653. In addition, to the list of examples of inquiries or "factors" articulated in *Darty*, the Board articulated two additional examples of inquiry in *In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1333-34 (TTAB 1995): 4) whether the term has the "structure and pronunciation" of a surname; and 5) whether the stylization of lettering is distinctive enough "to cause the mark not to be perceived as primarily merely a surname."[3] These inquiries are not exclusive and any of these circumstances – singly or in combination – and any other relevant circumstances may shape the analysis in a particular case. *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1278 (TTAB 2016); *see also In re Integrated Embedded*, 120 USPQ2d 1504, 1506 n.4 (TTAB 2016).

Whether the primary significance of an applied-for mark is merely that of a surname is a question of fact. *See Darty*, 225 USPQ at 653-54. There is no rule as to

---

[3] Where, as here, the mark is in standard characters, there is no inquiry into the effect of stylized lettering. *In re Yeley*, 85 USPQ2d 1150, 1151 (TTAB 2007).

the kind or amount of evidence necessary to show that the applied-for mark would be perceived as primarily merely a surname. This question must be resolved on a case-by-case basis. *Id.* at 654; *see also, e.g., In re Pohang Iron & Steel Co.*, 230 USPQ 79, 79 (TTAB 1986). The entire record is examined to determine the primary significance of a term.

We proceed to review and consider the evidence and arguments of record to determine whether WEISS WATCH COMPANY is primarily merely a surname.

### *Whether WEISS is the Surname of Anyone Connected with Applicant*

We begin by noting that the application is signed by Cameron Weiss as Applicant's president. The Examining Attorney submitted pages from Applicant's website shown in part below,[4] wherein the consumer is informed that WEISS is the surname of Applicant's founder and head watchmaker.



___
[4] WEISS (weisswatchcompany.com), July 6, 2016 Office Action at 3.

"This, in itself, is highly persuasive that the public would perceive [the mark] as a surname." *Darty*, 225 USPQ at 653. *See also Miller v. Miller*, 105 USPQ2d 1615, 1620 (TTAB 2013) ("That Applicant's name is MILLER strengthens the inference that the public will perceive the term as a surname."). Applicant's promotion of its founder's connection to the company and its goods is persuasive of consumer perception of WEISS as a surname. Consumers are exposed to the surname significance on Applicant's website.

### *Whether and to What Extent WEISS Is Encountered As a Surname*

During prosecution, the Examining Attorney submitted excerpts from the website Mongabay.com that include the following:[5]

> WEISS ranks #531 on the list of the most common surnames in America for 2000.
>
> WEISS had 56,153 occurrences in the 2000 Census, according to U.S. government records.
>
> Out of a sample of 100,000 people in the United States, WEISS would occur an average of 20.82 times.

---

[5]Mongabay.com, February 3, 2016 Office Action at 13. While the information conforms to data obtained from the 2000 U.S. Census Bureau, *see* http://www.census.gov/topics/population/genealogy/data/2000_surnames.html, we note the better practice would be to retrieve this information directly from the U. S. Census Bureau. TMEP § 1211.02(b)(iii) (Jan. 2017). Updating the data from the Census Bureau, the Excel document "File A: Top 1000 Names" listing of frequently occurring surnames in the United States from the 2010 Census shows WEISS ranking at #587 with 57,112 occurrences. At http://www.census.gov/topics/population/genealogy/data/2010_surnames.html. "Because the U.S. census is a standard reference, we may, and do, take judicial notice of the information." *In re Highlights for Children, Inc.*, 118 USPQ2d 1268, 1271 n.7 (TTAB 2016); *see also In re Tokutake Indus. Co., Ltd.*, 87 USPQ2d 1697, 1699 n.1 (TTAB 2008); *In re Spirits Int'l N.V.*, 86 USPQ2d 1078, 1085 n.11 (TTAB 2008).

In addition, the Examining Attorney submitted the results from a public records search from the LEXIS/NEXIS database for the last name "WEISS."[6] The search returned 99,683 instances of the surname WEISS appearing in a nationwide telephone directory of which 500 listings were displayed.

Applicant argues that "in a nation of over 320 million people, 56,000 results amounts to barely 0.02% of the 320 million Americans. Even the 99,000 phone directory names, collectively, is barely 0.03% of the total U.S. population. Such a small percentage of Americans having the Weiss surname supports Appellant's assertion that WEISS is a rare surname." App. Brief, 4 TTABVUE 7. However, "given the large number of different surnames in the United States, even the most common surnames would represent but small fractions of such a database." *In re Gregory*, 70 USPQ2d 1792, 1795 (TTAB 2004).

The U.S. Census Bureau data, showing 56,153 occurrences of the surname "Weiss" and that it ranks in the top 1000 of United States surnames, and the telephone directory search which found a total of 99,683 names, show that WEISS is not rarely encountered as a surname in the United States.

### *Whether WEISS Has Any Recognized Meaning Other Than as a Surname*

There is no evidence showing that WEISS has a recognized meaning in English other than as a surname. In fact, the Examining Attorney submitted the result of a search in the *Macmillan Dictionary* showing no entries for WEISS,[7] and this

---

[6] February 3, 2016 Office Action at 1.

[7] *Macmillan Dictionary* (www.macmillandictionary.com) February 3, 2016 Office Action at 14.

supports a finding that WEISS does not have any recognized meaning other than as a surname in English; and supports the Examining Attorney's case that the primary significance of WEISS is as a surname. *See, e.g., In re Isabella Fiore LLC,* 75 USPQ2d 1564, 1566 (TTAB 2005). *See also Darty,* 225 USPQ at 653-654.

Our inquiry is not concluded, however, because Applicant invokes the doctrine of foreign equivalents asserting that the meaning of WEISS in a foreign language could remove the surname significance of WEISS. *See Isabella Fiore,* 75 USPQ2d at 1567-70 (holding FIORE, which is the Italian equivalent of "flower," not primarily merely a surname). Applicant argues that WEISS means "white" in German and, therefore, this other meaning in German removes WEISS from being primarily merely a surname. App. Brief, 6 TTABVUE 9. Applicant supports this argument with the following translation from Google Translate:[8]



The doctrine of foreign equivalents is not an absolute rule, but merely a guideline, which should be applied only when it is likely that the ordinary American purchaser would stop and translate the foreign word into its English equivalent. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772,* 396 F.3d

---

[8] Google Translate (translate.google.com), June 14, 2016 Response at 2.

1369, 1377, 73 USPQ2d 1689, 1696 (Fed. Cir. 2005). The "ordinary American purchaser" includes "all American purchasers, including those proficient in a non-English language who would ordinarily be expected to translate words into English." *In re Spirits Int'l, N.V.*, 563 F.3d 1347, 1352, 90 USPQ2d 1489, 1492 (Fed. Cir. 2009). The Board has found that consumers would stop and translate a term when it is from a major, modern language, spelled in the standard way in the foreign language, and is the only translation of the English word to which it translates, so that there is no question that its translated meaning would be recognized and not considered obscure. *Isabella Fiore*, 75 USPQ2d at 1569. *See also In re Pan Tex Hotel Corp.*, 190 USPQ 109, 110 (TTAB 1976) (LA POSADA not descriptive for lodging and restaurant services because, while literally translated as "the inn," the term "posada" carries added connotations of a home or dwelling and creates a different commercial impression); *In re Buckner Enters. Corp.*, 6 USPQ2d 1316, (TTAB 1987) (PALOMA not confusingly similar to DOVE because the translation "pigeon" or "dove" is not the direct equivalent of just "dove").

Applicant argues that there are many German speakers in the United States, and, in support of this statement, Applicant attached to its brief an excerpt purportedly from the Wikipedia website. This evidence is untimely and the Examining Attorney's objection is sustained. Trademark Rule 2.142(d), 37 C.F.R. §2.142(d). Nonetheless, we recognize that German is a major, modern language and

we take judicial notice of U.S. Census data showing German is spoken in 1,109,216 U.S. households in 2009.[9]

As to the translation, while the other meaning (*i.e.*, "white") is not obscure, based on the record, WEISS is not the standard orthography for the word "white" in German; as shown above, in German the word "white" is spelled as "Weiß." Applicant's evidence from the Google Translate tool shows that the term "Weiß" was detected as German and translates from German into English as "white." It does not show that "Weiss" spelled without the eszett[10] translates to "white" in English. "White" translated from English into German is spelled as "weiß" – with the letter eszett, not as "Weiss."[11] In addition, we take judicial notice that WEISS derives from a German habitational name, that is, a German surname based on a location.

---

[9] Language Projections: 2010 to 2020 Table 1 (https://www.census.gov/hhes/socdemo/language/data/acs/Ortman_Shin_ASA2011_paper.pdf).

[10] We take judicial notice that "eszett" is the letter ß in the German alphabet. *Langenscheidt Dictionary* (en.langenscheidt.com/german-english/eszett). The Board may take judicial notice of dictionary definitions, including definitions or entries from references that are the electronic equivalent of a print reference work. *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983) (dictionary definitions); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006) (online dictionaries that exist in printed format or regular fixed editions).

[11] *Langenscheidt Dictionary* (en.langenscheidt.com/english-german/white) showing the translation of "white" from English to German as "weiß." *Langenscheidt* references both British and American English. (en.langenscheidt.com/english-german ("The online German-English dictionary includes British and American English as well as Austrian and Swiss German terms")).

Being a German habitational name reinforces consumer perception of the surname significance of WEISS, even to German speakers.[12]

The question remains whether a consumer is likely to stop and translate WEISS in the proposed mark WEISS WATCH COMPANY because"[w]hen it is unlikely that an American buyer will translate the foreign mark and will take it as it is, then the doctrine of foreign equivalents will not be applied." *Palm Bay Imps. Inc. v. Veuve Cliquot Ponsardin Maison Fondee En 1772*, 73 USPQ2d at 1696 (citing *In re Tia Maria, Inc.*, 188 USPQ2d 524 (TTAB 1975)).

The Examining Attorney argues:

> In this case, the nature of the mark, the manner of its presentation, and the circumstances of its use in connection with applicant's goods do not support finding that WEISS is the type of foreign term potential American consumers familiar with the foreign language would likely stop and translate.
>
> The arguments that WEISS also means "white" in German and that consumers would regard this as the term's primary significance in the context of the applied-for mark are undermined in this case by the term's combination with the generic English wording WATCH COMPANY. Because it immediately follows WEISS, WATCH COMPANY serves as a signal to consumers,

---

[12] ***Dictionary of American Family Names*** vol. 3 p. 593 (Oxford University Press 2003) showing one origin of the surname WEISS as a German habitational name, i.e., a surname based on place or habitation. "Weiss … 3. German: habitational name from any of various places named Weis(s) or Weissen…" A "habitational name" is a surname that is "taken from the names of towns, villages farmsteads, or other habitations most of which existed long before surnames came into being." *Id.* vol. 1 p. xvi. The Board may take judicial notice of standard reference works. *In re Mr. Recipe, LLC*, 118 USPQ2d 1084, 1087 n.3 (TTAB 2016) (judicial notice taken from encyclopedia); *In re Broyhill Furniture Indus. Inc.*, 60 USPQ2d 1511, 1514 n.5 (TTAB 2001) (judicial notice taken of The Encyclopedia of Furniture, The Complete Guide To Furniture Styles, and Seng Furniture Facts); *In re Astra Merck Inc.*, 50 USPQ2d 1216, 1219 (TTAB 1998) (judicial notice taken of Physician's Desk Reference and other PDR publications). *See also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ at 596 (dictionary definitions).

> whether they speak German or not, that WEISS is not a foreign word arbitrarily or incongruously combined with an English phrase – or one requiring translation – but a common surname associated with or indicating the source of the goods.
>
> Given that consumers are accustomed to encountering surname marks presented like the mark in this case, i.e., a term with well-established surname significance (WEISS) combined with generic wording for the goods and an entity type (WATCH COMPANY), the resulting commercial impression is such that consumers are likely to perceive the mark – as a whole – as primarily merely a surname mark. This likelihood is compounded by the fact that the applicant's founder uses the term WEISS as a surname.
>
> Accordingly, WEISS, in the context of its use in the applied-for mark, is not the type of term potential American customers familiar with German would likely stop and translate; consequently, the primary significance of the mark as a whole – WEISS WATCH COMPANY – to the purchasing public is merely that of a surname.

Ex. Att. Brief, 6 TTABVUE 13.

In *Isabella Fiore*, the term "Fiore" was spelled in the standard Italian dictionary form and the English equivalent of "flower" only resolved to "fiore" and to no other term. Thus, there was no question of whether the term would be recognized in its current form as the Italian word for "flower." *Isabella Fiore,* 75 USPQ2d at 1570. Nor was the surname's non-surname meaning in Italian obscure. Thus, the Board concluded that consumers would stop and translate "Fiore" to "flower," which detracted from the surname significance of the term. *Id.*

The facts presented here are distinct from *Isabella Fiore*. Based on this record, WEISS in the applied-for mark is not spelled in the standard German dictionary form, which weighs against a finding that German speakers upon seeing WEISS

11

would stop and transliterate first to Weiß and then translate to "white" in English. Indeed, in the June 14, 2016 Response at 1, Applicant stated that "WEISS is the English *approximation* of WEIß which is [German] for 'white.'" (Emphasis added.). In addition, the record shows WEISS is a more common surname than "Fiore" in the United States. While "Fiore" was not considered rare, there were only 5,193 results in the NEXIS search of the Finder database compared with 99,683 occurrences for WEISS in the LEXIS/NEXIS search of the Public Records database. Moreover, there was no evidence that Fiore was the surname of anyone associated with that applicant, whereas here, WEISS is advertised to consumers as the name of Applicant's founder and head watchmaker. Finally, the surname WEISS originated as a habitational name in Germany and, therefore, a German speaker is likely to view WEISS as a surname rather than to translate it to another word. Taking all of these circumstances into account, it is unlikely that consumers familiar with the language will stop and translate WEISS immediately to the word "white" but instead will simply perceive it as surname. For these reasons, application of the doctrine of foreign equivalents is not appropriate in this case.

### *Whether WEISS Has the Structure and Pronunciation of a Surname*

Applicant points out that the Examining Attorney did not present argument as to whether WEISS WATCH COMPANY has the "look and feel of a surname." Applicants and examining attorneys may submit evidence that, due to a term's structure or pronunciation, the public would or would not perceive it to have surname significance. In view of the absence of evidence or argument as to whether

the proposed mark has the structure and pronunciation of a surname, we cannot make a determination as to how members of the public perceive the structure and pronunciation of WEISS WATCH COMPANY.

Accordingly, this inquiry plays no further part in our final determination.

### *Effect of Additional Wording*

Applicant argues that WEISS WATCH COMPANY must be considered as a whole and the Examining Attorney does not assert that "the mark in its entirety, is primarily a surname." App. Brief, 4 TTABVUE 8. The Examining Attorney responds that "[t]he question is not whether WEISS WATCH COMPANY is perceived as a surname, but whether and to what extent the term WEISS is perceived primarily as a surname or as something other than a surname when used in combination with the generic English wording WATCH COMPANY." Ex. Att. Brief, 6 TTABVUE 11.

There is no dispute that in considering whether a mark is primarily merely a surname the "mark sought to be registered must be considered in its entirety." *Hutchinson Tech.*, 7 USPQ2d at 1492. Merely descriptive terms that have not acquired source-identifying significance or the generic name for goods or services typically do not "detract from the primary surname significance in a mark containing a surname." *Azeka Bldg. Corp. v. Azeka,* 122 USPQ2d 1477, 1482 n.9 (TTAB 2017) (construing *Hutchinson Tech.*, 7 USPQ2d at 1492-93). *See also Miller v. Miller*, 105 USPQ2d 1615, 1622 (TTAB 2013) and cases cited therein. Similarly, combining a surname with other matter incapable of indicating source typically will

not overcome the mark's surname significance. *See, e.g., In re I. Lewis Cigar Mfg. Co.*, 205 F.2d 204, 98 USPQ 265, 267 (CCPA 1953) (holding S. SEIDENBERG & CO'S. primarily merely a surname).

The addition of WATCH COMPANY in the mark does not detract from the primary significance of the mark. When encountering the proposed mark WEISS WATCH COMPANY consumers would perceive the mark in its entirety as primarily merely a surname. The Examining Attorney has demonstrated that the word WATCH is generic for the applied-for goods, COMPANY is the entity designation, and the combined wording WATCH COMPANY is separately incapable of functioning as a mark for watches; thus, Applicant appropriately disclaimed WATCH COMPANY upon request.[13] Where, as here, incapable wording is appended to a surname, the combination when viewed as a whole in the context of the Applicant's goods will be considered to be primarily merely a surname under Section 2(e)(4). *Integrated Embedded*, 120 USPQ2d at 1510 (combination of the surname BARR with the non-source-identifying term GROUP for training, engineering, and expert witness services in the field of computer hardware and software, when viewed as a whole in the context of applicant's services, does not detract from surname significance); *Miller v. Miller*, 105 USPQ2d at 1622 (the

---

[13] *See* February 3, 2016 Office Action at 7-9 (third-party websites showing the words "watch" and "company" used separately and together as the generic word for the goods plus the name of the entity designation). *See also id.* at 11 (dictionary definition for "company" as "a business enterprise; a firm" from ***The American Heritage Dictionary of the English Language*** (www.ahdictionary.com)).

generic wording LAW GROUP does not diminish surname significance of MILLER LAW GROUP for legal services).

### *Third-party Registrations*

Finally, Applicant also argues for the first time in its brief that other WEISS-formative marks on the Principal Register confirm the inherent distinctiveness of WEISS WATCH COMPANY. App. Brief, 4 TTABVUE 11-12. Applicant included a list of third-party registrations in its brief. The Examining Attorney objected to this list and correctly explained that "submission of a list of registrations does not make such registrations part of the record. To make third-party registrations part of the record, an applicant must submit copies of the registrations, or the complete electronic equivalent from the USPTO's automated systems, prior to appeal." Ex. Att. Brief, 6 TTABVUE 14-15 (citations omitted). *See In re Promo Inc.*, 78 USPQ2d 1301, 1304 (TTAB 2006). Applicant's reply that the Examining Attorney did not object to consideration of the third-party registrations is simply wrong. The Examining Attorney did, in fact, object by noting that the registrations in the list were not made properly of record and did not address the third-party registrations other than to state the well-established maxim that prior decisions and actions of other trademark examining attorneys are not binding on the USPTO or the Board. Ex. Att. Brief, 6 TTABVUE 14-15. The Examining Attorney's objection is sustained; however, we note the list on its face does not assist Applicant's argument that its mark, WEISS combined with the incapable matter, WATCH COMPANY, is not primarily merely a surname. Three of the marks are apparently stylized and the

other three are combined with other matter (a play on a phrase (WEISS WEISS BABY), a double surname (WEISS-ROHLIG) and an arguably capable phrase (WEISS MULTI-STRATEGY ADVISORS)).

*Conclusion*

Taking into consideration all of the argument and evidence presented by this case, we find that the primary significance of WEISS is as a surname. As in *Darty*, we accord particular weight to Applicant's promotion of the fact that WEISS is the surname of its founder and head watchmaker. There can be no dispute that when used in connection with watches, the additional words WATCH COMPANY are incapable of source-identifying function and, viewing the mark as a whole in the context of the identified goods, do not alter the primary significance of the proposed mark WEISS WATCH COMPANY as primarily merely a surname. Finally, application of the doctrine of foreign equivalents is not appropriate in this case as those consumers familiar with the German language are unlikely to stop and translate WEISS.

**Decision**: The refusal to register under Section 2(e)(4) of the Trademark Act is affirmed.